**UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| **Mizzou Students for Justice in Palestine**, | |
| Plaintiff, | |
| v. | **Case No. 2:25-cv-04184-SRB**<br>**Hon. Judge Stephen R. Bough** |
| **Dr. Mun Y. Choi,** President of the University of Missouri School System and Chancellor of the University of Missouri, in his individual and official capacity, | |
| Defendant. | |

**<u>SUGGESTIONS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS.............................................................................................. 1

STANDARD FOR PRELIMINARY INJUNCTION............................................. 4

ARGUMENT ................................................................................................................. 4

    I.   Plaintiffs Have a Fair Chance of Succeeding on the Merits. ......................... 4

      A.   The Parade isn't Government Speech, because it fails Shurtleff................ 4

         1.   The Homecoming Parade is Historically a Forum for Private Speech. ... 5

         2.   The Public Does Not Perceive the Homecoming Parade as Government
Speech……….. ......................................................................................... 7

         3.   The Extent to Which the University Actively Shapes or Controls the
Expression.
………………………………………………………………………8

      B.   MSJP's Inevitable Exclusion from the 2025 Homecoming Parade would
Violate the First Amendment. ............................................................ 10

         1.   MSJP's Exclusion Violates the First Amendment because the Parade is
an Unlimited Designated Public Forum. .................................................. 11

         2.   MSJP's Exclusion Violates the First Amendment Even if the Parade is a
Limited Designated Public Forum....................................................... 13

    II.   The Remaining Preliminary Injunction Factors Favor Plaintiff. ................. 16

CONCLUSION.............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Bowman v. White*, 444 F.3d 967 (8th Cir. 2006) ............................................8, 10, 11, 12, 13

*Cajune v. Ind. Sch. Dist. 194*, 105 F.4th 1070 (8th Cir. 2024) ........................................4, 8, 9

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215 (11th Cir. 2019) ................................................................................................................................. 7

*Chiu v. Plano Ind. Sch. Dist.*, 260 F.3d 330 (5th Cir. 2001) ................................................. 13

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) ............................ 4

*Frisby v. Schultz*, 487 U.S. 474 (1988) ............................................................................... 12

*GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024)................. 7, 8

*Healy v. James*, 408 U.S. 169 (1972) ................................................................................... 8

*Iancu v. Brunetti*, 588 U.S. 388 (2019) .............................................................................. 12

*Leake v. Drinkard*, 14 F.4th 1242 (11th Cir. 2021) ......................................................5, 7, 8

*Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133 (2d Cir. 2004) ..........................10, 11

*Matal v. Tam*, 582 U.S. 218 (2017).........................................................................4, 7, 10

*Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864 (8th Cir. 2012) .................... 4

*Murthy v. Missouri*, 603 U.S. 43 (2024) ........................................................................... 16

*N. Shore Right to Life Comm. v. Manhasset Am. Legion Post No. 304, Town of N. Hempstead*, 452 F. Supp. 834 (E.D.N.Y. 1978) ................................................................................................ 5

*Neighborhood Enterprises, Inc.* v. *City of St. Louis*, 644 F.3d ............................................... 15

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983).........................10, 11, 12

*Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724 (8th Cir. 2003) ..................... 4

*Pleasant Grove City v. Summum*, 55 U.S. 460 (2009)............................................................ 4

*Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030 (8th Cir. 2016) ................................................................................................. 4

*Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819 (1995) ..................................... 14

*Schmitt v. Rebertus*, __F.4th__, 2025 WL 2352582 (8th Cir. 2025) ................................. 4, 16

*Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243 (2022) ........................................... 5, 7, 8

*Thorburn v. Austin*, 231 F.3d 1114 (8th Cir. 2000) ...................................................... 12, 13

*Turning Point USA at Arkansas State Univ. v. Rhodes*, 973 F.3d 868 (8th Cir. 2020) .............. 11

*Viewpoint Neutrality Now! v. Regents of University of Minnesota*, 516 F.Supp.3d 904 (D. Minn. 2021) ..................................................................................................... 12, 13, 14

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015) ...................... 7, 9

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .......................................................... 13

*Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400 (8th Cir. 1995) ......................................... 15

**INTRODUCTION**

When Mizzou Students for Justice in Palestine ("MSJP") applied to participate in the University of Missouri's ("the University") 2024 Homecoming Parade, University Chancellor Dr. Mun Choi denied their application. He did so because he did not want the students to use the 2024 Parade to express their belief that Israel was committing a genocide and killing children in Gaza. While MSJP was forced out of the 2024 Parade, it proceeded as normal, with both student and non-student groups expressing all kinds of political messages, from pro-life parade floats to MAGA flags. The only message excluded from the 2024 Parade was support for Palestinians and criticism of Israel.

Just weeks away from the 2025 Parade, Dr. Choi is poised to deny MSJP entry again. Since denying MSJP last year, Dr. Choi has stood by the pretextual explanations he asserted were the reasons he excluded MSJP. Dr. Choi and the University even changed the rules specifically because they understood the constitutional implications of last year's denial, perhaps hoping a constitutional violation this year would be less apparent. The Constitution forbids Dr. Choi from targeting MSJP because of its political beliefs, as he did last year, and as he's imminently preparing to do this year. This Court must enjoin Dr. Choi from silencing MSJP for a second time.

**STATEMENT OF FACTS**

MSJP applied to the 2024 Homecoming Parade in Fall 2024. See Ex. A, Decl. of Isleen Atallah at ¶4. A little over a week before the 2024 Parade, the University's Dean of Students, at the direction of Choi, requested a meeting with MSJP to "understand MSJP's intentions for the parade." See Ex. B, Froese Email. No other student organization was asked to have a similar meeting. Ex. A. at ¶8. At the meeting, university administrators, directed by Choi, urged MSJP members to change their plans to hold a "STOP THE GENOCIDE" banner at

the parade. *Id.* at ¶11. The students refused. *Id.* at ¶12. At no time in the meeting did University administrators suggest that MSJP's participation in the parade was imperiled by their insistence on holding a common and typical political slogan during the parade. *Id.* at ¶13.

Nonetheless, just three days before the 2024 Parade, Choi emailed MSJP and announced, "I decided to deny MSJP's participation in the Homecoming Parade." See Ex. C, Choi Denial Email. Choi cited safety concerns based on "[a] review of SJP events around the country," and what he characterized as a "concerning" event involving one MSJP member earlier that semester. *Id.* The MSJP member was never questioned or cited for a conduct violation for that "concerning" event. Ex. A at ¶18. No other student organization was denied (or even scrutinized) on the same grounds. *Id.* at ¶15.

Ultimately, the parade took place with all kinds of messages, including pro-choice and pro-life expressions (the pro-life groups, for example, held up a poster with a picture of a newborn, and the slogan "liberty and justice for all… born and unborn"), cultural displays by students, and a Donald Trump themed truck with MAGA signs and a banner that read "PROMISE MADE, PROMISES KEPT." See Compl. at ¶68; Ex. D, Screenshots of 2024 Parade. When MSJP and other student organizations asked for an apology and a guarantee that MSJP would not be excluded in 2025, Choi refused and stated that he "st[ood] by the decisions that were made to ensure the safety of our campus," and would not "respond to demands." Ex. E, Choi's Email Response to Students.

In the aftermath of the 2024 Parade, Choi publicly contemplated the historical lack of a policy governing expression at the University's Parade.[1] This year, Choi and the

---

[1] Genevieve Smith, *MU Faculty Press Chancellor Mun Choi on Diversity Policies, Political Homecoming Floats*, COLUMBIA MISSOURIAN (Nov. 15, 2024),

University implemented a policy for the first time. *See* Ex. G, 2025 Parade Policy. The policy establishes a theme of "Celebrating Black and Gold." *Id.* It further states the purposes of the parade are to: "A. Celebrate MU's traditions and accomplishments; B. Cultivate alumni connections to the institution; C. Honor University-selected achievements of MU students, personnel, and/or alumni; D. Rally support and enthusiasm for the Homecoming football game." *Id.* The policy assigns initial approval and denial power to the Office of Alumni Engagement ("OAE"). *Id.* The policy also permits OAE to request additional information or request amendments from parade applicants. *Id.* At bottom, however, it vests "ultimate approval" authority in Choi, whose decisions cannot be appealed. *Id.* In response to the present lawsuit, the University stated that it "will defend its decision in any lawsuit that is filed" and reiterated the reasons it supplied last year for MSJP's denial: the actions of other, unaffiliated SJPs around the country.[2]

MSJP applied to participate in the 2025 Homecoming Parade in late August 2025. *See* Ex. F, MSJP 2025 Application. In its application, MSJP expressed its intent to drive a truck with the Palestine flag and have people wearing traditional Palestinian garb and attire. *Id.* They also expressed an intent to perform traditional Palestinian dance. *Id.* To honor the Policy's themes and topics, MSJP plans to pass out candy and bracelets to "share [its] culture and connect with the community." *Id.* MSJP is open to amending its application in response to any reasonable requests from OAE. *See* Ex. A at ¶26.

---

https://www.columbiamissourian.com/news/higher_education/mu-faculty-press-chancellor-mun-choi-on-diversity-policies-political-homecoming-floats/article_5cd2b258-a36d-11ef-8345-7b5f49fcd445.html.

[2] Jazmin Haliburton, *Student organization files lawsuit against Univeristy of Missouri President*, ABC 17 (Aug. 27, 2025), https://abc17news.com/news/top-stories/2025/08/27/student-organization-files-lawsuit-against-university-of-missouri-president/.

## STANDARD FOR PRELIMINARY INJUNCTION

When deciding on a motion for a preliminary injunction, a court must consider: (1) the threat of irreparable harm; (2) the balance between the irreparable harm and any injury the injunction would inflict on the defendant; (3) the likelihood of success on the merits; and (4) the effect of an injunction on the public interest. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 729, n.3 (8th Cir. 2003) (citing *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). For "likelihood of success," a plaintiff need only demonstrate a "fair chance of prevailing" when challenging a policy or administrative decision rather than a "complex statute [adopted] through fulsome debate." *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016).

"When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Schmitt v. Rebertus*, __F.4th__, 2025 WL 2352582 at *7 (8th Cir. 2025) (citing *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (quotation omitted).

## ARGUMENT

### I.     Plaintiffs Have a Fair Chance of Succeeding on the Merits.

### A.  The Parade isn't Government Speech, because it fails *Shurtleff*.

The Mizzou Homecoming Parade is not the government speech the Parade policy claims it to be. "Private speech cannot be passed off as government speech 'by simply affixing a government seal of approval.'" *Cajune v. Ind. Sch. Dist. 194*, 105 F.4th 1070, 1080 (8th Cir. 2024) (quoting *Matal v. Tam*, 582 U.S. 218, 235 (2017)). If it was government speech, the Free Speech Clause would not regulate it. *Pleasant Grove City v. Summum*, 55 U.S. 460, 467 (2009).

4

But this year's homecoming parade—just like the ones that preceded it—lacks the characteristics of government speech. *See Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243, 252 (2022) (applying a three-pronged test that regards the history of the expression, the public's perception of the expression, and the government's control of the expression).

1. The Homecoming Parade is Historically a Forum for Private Speech.

The history of the University's Homecoming Parade strongly favors Plaintiff. In considering history, a court must consider both the general history of parades as well as the specific history of the Mizzou Homecoming Parade. *See Shurtleff*, 596 U.S. at 253-55.

Courts look at the roots and character of different types of parades. Consider *N. Shore Right to Life Comm. v. Manhasset Am. Legion Post No. 304, Town of N. Hempstead*, 452 F. Supp. 834 (E.D.N.Y. 1978), wherein the court enjoined a town from excluding one group from its Memorial Day parade. While the case was not about government speech, the opinion turns on the parade's history and character. The court observed that "Memorial Day parades have for many years been the communities' major annual event . . . . belong[ing] to all the people." *Id.* at 836. The parade included "various local organizations," some having "expressed views that some might deem political." *Id.* at 840. By contrast, in *Leake v. Drinkard*, the court reasoned that a veterans parade was government speech because of the "history of military parades in general," which governments have used since ancient times to "commemorate military victories and sacrifices." 14 F.4th 1242, 1248 (11th Cir. 2021).

Unlike the "ancient" tradition of military parades, *Leake*, 14 F.4th at 1248, the homecoming parade is only a century old and did not originate with the government, as both

public and private universities claim to have invented the event.[3] The homecoming parade has also traditionally included participation and expression from all corners of a university's campus and its surrounding community.[4] These parades are not government exercises, but "communities' major annual event" that historically "belongs to all the people." *N. Shore Right to Life Comm*, 452 F. Supp. at 836.

The history of the Mizzou Homecoming Parade is decisive. The modern Mizzou parade features "150 floats and about 30,000 attendees,"[5] and in 2024 included a wide range of parade floats from student groups and the public, *see* Compl. ¶68. The Homecoming Parade's diversity has long "united Tigers *and* reflected their ongoing fight for reform."[6] The parade was a vehicle for protest in 1990, for example, when the Legion of Black Collegians marched "in protest of racial injustices at MU."[7] Despite this and other moments of discord,[8] Mizzou has not, in recent history, published a policy governing the kind of speech allowed in the parade. As Defendant Choi stated after denying MSJP's parade application in 2024, "It turns out there are not many rules about it."[9]

---

[3] *See, e.g.*, Kyle Bonagura, "Breaking down who truly started the long-held tradition of homecoming," ESPN, https://www.espn.com/college-football/story/_/id/41813350/2024-college-football-homecoming-tradition-missouri-baylor-illinois (recounting homecoming origin stories from Mizzou, Baylor University, and more).

[4] *See, e.g.*, *History of Homecoming*, BAYLOR UNIV., https://homecoming.web.baylor.edu/welcome/history-homecoming (last visited Sep. 5, 2025) (at Baylor's first Homecoming Parade "[p]arade entries numbered well over 130, with 60 each of automobiles and carriages, plus student organizations on foot"); Annie Goldman & Genevieve Smith, *A timeline: 112 years of MU Homecoming*, THE MANEATER (Oct. 23, 2023), https://themaneater.com/116076/move/a-timeline-112-years-of-mu-homecoming ("1913: MU hosted the first Homecoming Parade, now a time-honored tradition involving the Columbia community.").

[5] Gracie Fitzgerald, *Tradition. History. Reunion.*, COMO Magazine (Oct. 5, 2022), https://comomag.com/2022/10/05/tradition-history-reunion/.

[6] "A timeline: 112 years of MU Homecoming," The Maneater, ¶1 https://themaneater.com/116076/move/a-timeline-112-years-of-mu-homecoming/ (emphasis added).

[7] Goldman & Smith, *supra* note 5.

[8] *See, e.g.*, Ruth Serven & Ashley Reese, "In Homecoming Parade, racial justice advocates take different paths," Columbia Missourian, https://www.columbiamissourian.com/news/in-homecoming-parade-racial-justice-advocates-take-different-paths/article_24c824da-6f77-11e5-958e-fb15c6375503.html.

[9] *See* Genevieve Smith, *supra* note 1.

2. <u>The Public Does Not Perceive the Homecoming Parade as Government Speech.</u>

The Mizzou Homecoming Parade is not reasonably perceived as the government's speech. When considering "whether the public would tend to view the speech at issue as the government's," *Shurtleff*, 596 U.S. at 255, the court considers whether the public understands the expression as "'conveying some message' on the government's 'behalf.'" *Shurtleff*, 596 U.S. at 255 (quoting *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 212 (2015) (quotations omitted).

In *Leake*, the court found that the city's public endorsement, funding, and organization of the local veterans parade, "strongly suggested that the [p]arade is government speech." 14 F.4th at 1249. The court reasoned that "[c]ities typically do not organize and fund events that contain messages with which they do not wish to be associated," and thus "we can safely assume that the organizers generally would not allow messages they did not want to be associated with." *Id.* at 1250 (quotations omitted) (cleaned up). *But see Int'l Women's Day Mar. Plan. Comm. v. City of San Antonio*, 619 F.3d 346, 360 (5th Cir. 2010) (finding city-sponsored parades were not government speech because the city merely "endors[ed] the general message of each event through its provision of financial support"). In contrast, in *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024), the Eighth Circuit looked at the placement of books in a public school library and concluded:

> "[I]t is doubtful that the public would view the placement and removal of books in public school libraries as the government speaking . . . . A well-appointed school library could include copies of Plato's *The Republic*, Machiavelli's *The Prince*, Thomas Hobbes' *Leviathan*, Karl Marx and Freidrich Engels' *Das Kapital*, Adolph Hitler's *Mein Kampf*, and Alexis de Tocqueville's *Democracy in America* . . . . [I]f placing these books on the shelf of public school libraries constitutes government speech, the State 'is babbling prodigiously and incoherently.'"

114 F.4th at 668 (quoting *Matal*, 582 U.S. at 236).

The Mizzou Homecoming Parade is undoubtedly organized and funded by Mizzou, in partnership with its Alumni Association and with the participation of student leaders.[10] Comparisons to *Leake*, however, end there. Public universities are widely understood to "serve as places specifically designated for the free exchange of ideas." *Bowman v. White*, 444 F.3d 967, 979 (8th Cir. 2006) (citing *Healy v. James*, 408 U.S. 169, 180 (1972)). Public schools are routinely obligated to "allow messages" both popular and unpopular, and "organize and fund events that contain messages with which they do not wish to be associated." *Leake*, 14 F.4th at 1250.

It would be incoherent, and ultimately untenable for Choi to assert that participants in the Mizzou Homecoming Parade "convey[] some message on the government's behalf," *Shurtleff*, 596 U.S. at 255 (internal quotation omitted), when the parade features all manner of controversial or partisan political expression, Compl. at ¶68. Instead, the Mizzou Homecoming Parade's cast of participants is akin to the diversity of books in a public school library, which the public does not perceive to speak for the government. *See GLBT Youth in Iowa Schools Task Force*, 114 F.4th at 668. Here too, the Plaintiff does not reason that the government intends to "babbl[e] prodigiously and incoherently." *Id.*

3. The Extent to Which the University Actively Shapes or Controls the Expression.

Choi plays little-to-no role in actively shaping the expression in the 2025 Homecoming Parade. While he may point to the newly formulated policy as adequate to tilt this consideration in their favor, "the mere existence of a review process with approval authority is insufficient by itself to transform private speech into government speech." *Cajune*, 105 F.4th

_____

[10] *See, e.g.*, *Mizzou Homecoming*, MIZZOU ALUMNI ASSOCIATION (last visited Sep. 5, 2025), https://www.mizzou.com/s/1002/alumni/19/event.aspx?sid=1002&gid=1001&pgid=10101.

at 1081. The government must "shape and control the expression." *Id.*; *see Walker*, 576 U.S. at 213 ("Texas maintains direct control over the messages conveyed on its specialty plates.").

Under this test, the Eighth Circuit recently held that Black Lives Matter posters placed in classrooms were not government speech, despite the fact that the government maintained a "review process and final approval authority" over the posters. *Cajune*, 105 F.4th at 1081. The court observed that the posters were largely designed and submitted by "private activists," *id.* at 1075, while the government merely "maintained a passive role," *id.* at 1082.

So too here. The new Policy—brought into existence only because of the unconstitutional denial of MSJP last year—does little more than announce a color theme. It does not forbid political messages and directs participants to "[c]elebrate MU's traditions and accomplishments" as they see fit. *See* Ex. G. This general language could mean anything. And to police its meaning, the Policy gives OAE the authority to "request additional information or explanation" from Parade Applicants or "amendments to applications." *Id.* at 3.

The OAE is supposed to "approve or deny applications" based on "consistency of the proposed presentation with the Parade's theme/topics and other parade policies." *Id.* But Choi has final and unappealable authority over everything related to the parade. *Id.* While the policy justifies this vast grant of discretion, it does not bound it.

There is no evidence that the University or Choi "shape[s] and control[s]" the messages that will be communicated in the 2025 Homecoming Parade. *Cajune*, 105 F.4th at 1081. On the contrary, the Policy is little more than a "review process with approval authority," a type of limited control that the Eighth Circuit has conclusively held is not sufficient to satisfy this factor of the government speech analysis. *Id.* at 1082.

The Policy demonstrates that neither Choi nor the University exercise sufficient control to transform the Parade into government speech. And precedent here cautions this Court to conclude otherwise. *See Matal*, 582 U.S. at 235 ("If private speech could be passed off as government speech by simply affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints."); *Cajune*, at 1081 ("*Matal . . .* warned courts to be wary of situations where the government has 'dangerously misused' the government-speech doctrine by attempting to pass off certain speech as government speech.").

### B. MSJP's Inevitable Exclusion from the 2025 Homecoming Parade would Violate the First Amendment.

When Choi denies MSJP from participating in the 2025 Homecoming Parade, he will violate the First Amendment. He must be enjoined from doing so. For the purpose of a First Amendment forum analysis, the Eighth Circuit has identified four distinct fora, each with a different constitutional analysis when speech is restricted. *See Bowman v. White*, 444 F.3d at 975-76. Relevant here are the designated unlimited public forum and designated limited public forum. For the former, the government can only enforce content-neutral time, place, and manner speech restrictions that satisfy intermediate scrutiny. *Id.* at 976 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). For the latter, speech restrictions must be reasonable and viewpoint neutral. *Id.* (citing *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004).

MSJP's exclusion violates the First Amendment because the 2025 Parade is an unlimited, designated public forum, and MSJP's exclusion could not satisfy intermediate scrutiny. But even if the Court finds that the forum is a limited designated public forum, MSJP's exclusion still violates the First Amendment because it constitutes viewpoint discrimination.

1. <u>MSJP's Exclusion Violates the First Amendment because the Parade is an Unlimited Designated Public Forum.</u>

The 2025 parade is an unlimited designated public forum and MSJP's exclusion from the parade violates the First Amendment because their exclusion is not a content or viewpoint-neutral restriction nor is it narrowly tailored.

"A designated public forum is a nonpublic forum the government intentionally opens to expressive activity for a limited purpose such as use by certain groups or use for discussion of certain topics." *Bowman*, 444 F.3d at 975 (citing *Perry*, 460 U.S. at 46). The Eighth Circuit distinguishes between two types of designated fora, limited and unlimited. The distinction between the two lies in whether the government limits the type of speaker or the type of speech allowed in the forum. *Id.* (citing *Turner*, 378 F.3d at 143). One example of a limited designated public forum is a "university concert hall . . . designated for particular speech by university-supported musicians." *Id.* Another example is an otherwise closed space on university grounds designated specifically for students and faculty speech. *Turning Point USA at Arkansas State Univ. v. Rhodes*, 973 F.3d 868, 876 (8th Cir. 2020).

Here, the Parade is boundless and thus an unlimited public forum. First, the Parade is not limited to particular speakers. The policy is clear that, like last year, registered student organizations and community organizations, as well as paid sponsors, can participate in the Parade. *See* Ex. G. That means that both Planned Parenthood and the Catholic Church can participate in the same parade as Mizzou's Young Democratic Socialists of America and College Republicans—by Mizzou's design. Second, the Policy, on its face, does not meaningfully restrict speech. Instead, the Policy requires only that Parade participants their couch within the themes and color schemes of the Policy. *Id.* at 1. But with the Parade's vague purpose being to, among other things, "[c]elebrate MU's traditions and

accomplishments," the Policy does not dictate the kind of speech participants must express at the parade. There's nothing in the policy, for example, that would prevent the same student organization that celebrated President Trump at last year's parade from writing "MAKE AMERICA GREAT AGAIN" this year, as long as they did so in black and gold lettering. *See id.* (requiring that the speech be only "limited to expression on topics identified by the University for the purposes noted above"); Ex. D.

In an unlimited designated public forum, a speech restriction only survives First Amendment Scrutiny if it is a content-neutral time, place, and manner restriction, and if it is narrowly tailored to serve a compelling government interest. *See Bowman*, 444 F.3d at 980 (citing *Perry*, 460 U.S. at 45). MSJP's exclusion would be neither content-neutral nor would it be narrowly tailored to serve a compelling government interest.

"Content discrimination occurs whenever a government regulates particular speech because of the topic discussed or the idea or message expressed." *Viewpoint Neutrality Now! v. Regents of University of Minnesota*, 516 F.Supp.3d 904, 919 (D. Minn. 2021) (quoting *Iancu v. Brunetti*, 588 U.S. 388, 417 (2019) (Sotomayor, J., concurring in part)) (internal quotations omitted). "A narrowly tailored statute 'targets and eliminates no more than the exact source of the evil it seeks to remedy.'" *Thorburn v. Austin*, 231 F.3d 1114, 1120 (8th Cir. 2000) (quoting *Frisby v. Schultz*, 487 U.S. 474, 480 (1988)). Under this analysis, even the pretextual reasoning (more on pretext *infra* at 17) offered by Choi would not survive constitutional scrutiny. His proffered reason for excluding MSJP—the safety of Parade Participants—could be addressed through much more narrow means. Assuming, *arguendo*, that safety is a genuine concern and that the actions of an MSJP member may actually threaten the safety of

participants[11], Choi could, instead, forbid the specific student(s) giving rise to concerns from the Parade or provide additional security specific to MSJP's participation. By excluding the entire organization, however, Choi went far beyond "the exact source of the evil" he sought to remedy, *Thorburn*, 231 F.3d at 1120, and instead impermissibly acts "in such a manner that a substantial burden on speech does not serve to advance [his] goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).

2.  MSJP's Exclusion Violates the First Amendment Even if the Parade is a Limited Designated Public Forum.

Plaintiff acknowledges that the line between unlimited and limited designated fora can be cause for "substantial confusion," but even if the Court finds that the Parade is a limited forum, MSJP's exclusion still violates the First Amendment. *Bowman*, 444 F.3d at 975 (citing *Chiu v. Plano Ind. Sch. Dist.*, 260 F.3d 330, 345-46 & nn.10–12 (5th Cir. 2001)).

If the court does indeed find that the parade is a limited designated public forum on the grounds that it does restrict speakers or speech, MSJP's exclusion would still be unconstitutional because it amounts to viewpoint discrimination. "[O]nce a university chooses to create a limited public forum and restrict it to a particular type of speaker (e.g., [Registered Student Organizations]) or a particular subject (e.g., abortion), the university cannot then exclude speakers based on their ideology (e.g., conservative or liberal) or based on their viewpoint (e.g., pro-life or pro-choice)." *Viewpoint Neutrality Now! v. Regents of University of Minnesota*, 516 F.Supppl.3d 904, 919 (D. Minn. 2021). Doing so is "'an egregious

---

[11] Plaintiff firmly rejects the premise of both the safety reasoning and the suggestion that any MSJP member was a genuine threat to safety at the parade and addresses the validity of these concerns at length below.

form of content discrimination.'" *Id.* (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995)).

Last year, Choi denied MSJP because of their viewpoint on Palestine and Israel. Specifically, Choi's actions leading up to the parade made it clear that he denied MSJP because they sought to express the viewpoint that Israel was committing genocide and killing children in Gaza. *See* Ex. A. Choi required MSJP to attend a meeting to explain its intentions at the parade—a meeting he did not require of any other student or community organization in the parade. *See id.*; Ex. B. At that meeting, University officials—at Choi's direction— implored MSJP to not carry a banner stating "END THE GENOCIDE." *Id.* at ¶11. MSJP leaders declined. *See id* at ¶12. Shortly thereafter, Choi sent an email to MSJP notifying them they would not be permitted in the parade, ostensibly because of the actions of SJPs at *other universities* and because of a verbal altercation between one SJP member and a non-student at the University's designated spontaneous free speech zone. *See id.* at ¶17*;* Ex. C.

When a student organization agreed to carry a Palestine flag in solidarity with MSJP, Choi made his intent to discriminate based on viewpoint abundantly clear by telling the student organization that they could not carry the Palestine flag unless they also carried the Israel flag. *See id.* at ¶27. Choi left no room for any interpretation of his actions except that he did so because he did not want messages in support of Palestine displayed at the parade. *See Rosenberger*, 515 U.S. at 829 (holding that the government cannot target "particular views taken by speakers on a subject").

The stated reasons for denying MSJP were pretextual. Eighth Circuit courts have recognized that speech restrictions with ostensibly neutral justifications, like safety, may be pretextual if they are only raised in response to specific types of speech.. *See Neighborhood*

*Enterprises, Inc.* v. *City of St. Louis*, 644 F.3d 728, 737 (8th Cir. 2011) (concluding that the Court was "not 'required to accept legislative explanations from a governmental entity regarding the purpose(s) for a restriction on speech without further inquiry'") (quoting *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1406 (8th Cir. 1995)). In *Whitton*, the court found that the city's sign ordinance that differentiated between speakers for reasons unrelated to the legitimate interests prompting the regulation impermissibly regulated speech. 54 F.3d at 1405–06.

Here, the ostensible interest of the University—safety—prompted a process and restriction enforced *only against MSJP. See* Compl. at ¶ 62 ("[MSJP] was the only parade applicant subjected to this level of scrutiny over its application and the only applicant whose application would be personally vetted by Chancellor Choi."). The fact that only MSJP apparently raised safety concerns, while groups with other controversial viewpoints like pro-Trump and pro-choice groups were not, despite a documented history of violence at demonstrations related to these causes, shows that safety was no more than a pretext for denying MSJP.[12] The real reason—as demonstrated above—was MSJP's viewpoint.

This year, MSJP has applied to participate in the parade and committed to the themes and topics outlined in the new policy. *See* Ex. F. Choi has already set the stage for denying MSJP on the same grounds as before. After last year's parade, MSJP asked Choi to apologize for excluding MSJP and guarantee that it would not be denied in the 2025 parade.[13] Choi

_____

[12] *See, e.g.*, Gerren Keith Gaynor, *Florida sheriff tells protesters ahead of anti-Trump rally: 'We will kill you'*, Yahoo!News (June 12, 2025), at https://www.yahoo.com/news/florida-sheriff-tells-protesters-ahead-200834099.html; Cassie Miller, *The Violent History of the Anti-Abortion Movement*, Southern Poverty Law Center (June 13, 2024), at https://www.splcenter.org/resources/reports/violent-history/.
[13] *University of Missouri President Mun Choi Reaffirms Decision to Deny SJP from Homecoming Parade, Rejects Demands Letter*, Campus Reform (Nov. 25, 2024), at https://www.campusreform.org/article/mizzou-president-doubles-barring-sjp-homecoming-parade-rejects-latest-demand-letter/26900.

refused to make that promise. *See* Ex. E. Then, in response to the present lawsuit, a University Spokesperson said "[t]he University will defend its decision in any lawsuit that is filed" and reiterated the pretextual reasons it supplied last year for MSJP's denial: the actions of other, unaffiliated SJPs around the country.[14] Defendant's past unconstitutional action combined with his continued reliance on the same pretext paves the way for MSJP to seek injunctive relief. *See Murthy v. Missouri*, 603 U.S. 43, 59 (2024) (past wrongs make it "easier . . . to prove . . . a continued risk of future restriction that is likely to be traceable to that same defendant.").

## II. The Remaining Preliminary Injunction Factors Favor Plaintiff.

"When a plaintiff has shown a likely violation of his or her First Amendment rights the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Rebertus*, 2025 WL 2352582 at *7. Because Plaintiff demonstrates a likelihood of success on its Free Speech claim, the remaining preliminary injunction factors are satisfied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a preliminary injunction enjoining Choi from denying its participation in the 2025 Homecoming Parade.

---

[14]*See supra*, at n.2.

**CAIR LEGAL DEFENSE FUND**

/s/ Lena Masri
Lena F. Masri
lmasri@cair.com
Gadeir Abbas*
gabbas@cair.com
Ahmad Kaki^
akaki@cair.com
453 New Jersey Ave., S.E.
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

**BALDWIN & VERNON**

/s/ Eric Vernon
Kevin Baldwin, MO Bar 49101
Eric Vernon, MO Bar 47007
Sylvia Hernandez, MO Bar 70670
Holly Vanostran, MO Bar 75546
BALDWIN & VERNON
108 S Pleasant St.
Independence, MO 64050
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
Sylvia@bvalaw.net
Robin@bvalaw.net

*Licensed in VA, not D.C.
Practice limited to federal matters
^Pro Hac Vice Application Forthcoming

*Counsel for Plaintiff*