# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

**Mizzou Students for Justice in Palestine**,   )
                                                        )
                   Plaintiff,       )
                                                         )       Case No. 2:25-cv-04184-SRB
              v.                      )
                                                         )
**Dr. Mun Y. Choi**, President of the University   )
of Missouri School System and Chancellor of   )
the University of Missouri, in his individual   )
and official capacity,                         )

                   Defendant.

## <u>SUGGESTIONS IN SUPPORT OF DEFENDANT'S<br>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     MSJP has not adequately alleged organizational standing. ..................................2

II.    MSJP's claim for injunctive relief (Count II) fails because it has not alleged that it lacks an adequate remedy at law.................................................................................4

III.   Dr. Choi is entitled to qualified immunity on MSJP's claims under 42 U.S.C. § 1983 because MSJP does not adequately plead a constitutional violation, and MSJP's request for an injunction fails for the same reason. ...........................................5

     A.    Dismissal is appropriate because the pleadings clearly show that the Parade is government speech.....................................................................................6

     B.    Even if a First Amendment analysis were relevant (and it is not), dismissal would still be appropriate because the Parade is a non-public forum...................11

IV.   Dr. Choi is entitled to qualified immunity on MSJP's damages claims (Count I) under 42 U.S.C. § 1983 because there was no "clearly established" right for MSJP to participate in the 2024 Parade. ...........................................................................13

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................2, 11, 13

*Bowman v. White*,
   444 F.3d 967 (8th Cir. 2006) ...................................................................11, 12, 13

*Cajune v. Indep. Sch. Dist. 194*,
   105 F.4th 1070 (8th Cir. 2024) ...........................................................................8, 9

*Dittmer Properties, L.P. v. F.D.I.C.*,
   708 F.3d 1011 (8th Cir. 2013) .................................................................................6

*Dollar Loan Ctr. of S.D., LLC v. Afdahl*,
   933 F.3d 1019 (8th Cir. 2019) .................................................................................5

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)................................................................................................3

*Grooms v. Privette*,
   2024 WL 1940179 (W.D. Mo. May 2, 2024), aff'd, 127 F.4th 730 (8th Cir.
   2025) .....................................................................................................................14

*Guar. Tr. Co. of N.Y. v. York*,
   326 U.S. 99 (1945)..................................................................................................4

*Kapacs v. Jurevica*,
   2016 WL 11491366, at *4 (D. Minn. Jan. 27, 2016), *report and
   recommendation adopted*, 2016 WL 829911 (D. Minn. Mar. 1, 2016), *aff'd*,
   676 F. App'x 610 (8th Cir. 2017)............................................................................5

*Kulkay v. Roy*,
   847 F.3d 637 (8th Cir. 2017) ................................................................................14

*Leake v. Drinkard*,
   14 F.4th 1242 (11th Cir. 2021) .................................................................9, 10, 15

*Lyons v. Vaught*,
   875 F.3d 1168 (8th Cir. 2017) ..............................................................................13

*Martinez v. Draper City*,
   2017 WL 3128806 (D. Utah July 21, 2017) ...............................................9, 10, 15

*McDonald v. Missouri Dep't of Corr.*,
   742 F. Supp. 3d 951 (E.D. Mo. 2024).....................................................................5

*Estate of Nash v. Folsom*,
    92 F.4th 746 (8th Cir. 2024) ................................................................5

*Pleasant Grove City, Utah v. Summum*,
    555 U.S. 460 (2009) ..........................................................................7

*Shurtleff v. City of Boston, Massachusetts*,
    596 U.S. 243 (2022) ...............................................................7, 8, 9, 10

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................4

*Timber Ridge Escapes, LLC v. Quality Structures of Arkansas, LLC*,
    2017 WL 11666486 (W.D.Mo. Nov. 22, 2017)..........................................4

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015)...............................................................7, 8, 9, 11

*White v. Pauly*,
    580 U.S. 73 (2017)...........................................................................14

**Statutes**

42 U.S.C. § 1983 ....................................................................................5, 13

**Other Authorities**

First Amendment ..............................................................................1, 6, 7, 11, 15

Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.2.5
    (7th ed.)...........................................................................................7

Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.4.1
    (7th ed.).........................................................................................12

Erwin Chemerinsky, FEDERAL JURISDICTION § 2.3.7 (4th ed.).....................................2

Rule 12(b) ...............................................................................................6

U.S. Const. Am. 1 ......................................................................................1

## INTRODUCTION

Under any reading of the pleadings, the University of Missouri's Homecoming Parade is a University-organized and University-managed event, subject to a formal application process, and curated by University officials to advance the University's own celebratory purposes. Thus, the Complaint fails to plausibly allege a constitutional violation, since the pleadings themselves—and the Parade Policy incorporated by reference—confirm the parade is government speech, which means this Court never reaches the First Amendment inquiry. Dismissal is appropriate as a matter of law.

Alternatively, even if treated as a nonpublic forum under the First Amendment, the University's limits on participation were both reasonable and viewpoint neutral, and therefore constitutional. Once again, dismissal would still be appropriate as a matter of law.

And taking things even beyond where they legally should go, even if this Court could make out a constitutional violation under the First Amendment, no precedent clearly establishes that a student group like Mizzou Students for Justice in Palestine ("MSJP") has a right to march in such an event, so University officials are entitled to qualified immunity. MSJP relies only on generalized free speech principles, but those abstractions cannot substitute for controlling authority particularized to these facts. At best, MSJP seeks to create new law—precisely the circumstance in which qualified immunity shields officials from personal liability.

Even apart from qualified immunity, MSJP's claims fatally falters on other grounds. MSJP lack organizational standing, as it pleads almost nothing about its structure, mission, or injury beyond conclusory assertions. And finally, its request for injunctive relief cannot proceed because it has not alleged that legal remedies—like damages—are inadequate.

Taken together, these defects require dismissal of the Complaint in full.

1

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). Determining whether a complaint crosses the plausibility threshold "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

<u>**ARGUMENT**</u>

**I.      MSJP has not adequately alleged organizational standing.**

MSJP's pleadings are inadequate to confer organizational standing. The organization pleads remarkably little about who it is and what its purpose is, saying only that it is "a registered student organization" at the University and that its mission is "dedicated to Palestine advocacy" with a purpose of "rais[ing] awareness … of the historical and ongoing injustices committed against Palestinians." Compl. ¶¶ 10, 25-27. They add nothing else, other than the legally-insignificant pleading that they "can reserve space on campus, receive and raise funds, and otherwise participate as other student organizations do in student life." *Id.* ¶ 10. MSJP omits other allegations necessary to confer standing as an organization to sue.

Organizations may sue "based on injuries to itself or based on injuries to its members." Erwin Chemerinsky, FEDERAL JURISDICTION § 2.3.7 (4th ed.). The Complaint does not say on which basis MSJP is suing, leaving the University and this Court to guess. Nonetheless, MSJP

2

appears to bring suit only on behalf of itself, since it only discusses itself as a party to the lawsuit, and since it makes little mention of its members. It does not, for instance, indicate that the members would be able to bring suit in their own right, nor make accompanying pleadings, such as pleading one or members who would be able to sue in their own right.

MSJP's pleadings are so deficient that it is unclear whether it is even an organization. It appears to be unincorporated. It has pled little to no information about its history or structure. It does not discuss who its members are, nor how many there are. A fair reading of the pleadings are that it is *not* an organization, but rather a loose affiliation of perhaps just a few students.

But even if it is an organization, it can only sue for injuries it has sustained if it can satisfy the "usual standards for injury in fact, causation, and redressability that apply to individuals." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024) (cleaned up). An organization "must show far more than simply a setback to the organization's abstract social interests." *Id.* (cleaned up). MSJP points to purchases of flags and planning it did in 2024 for the Parade, but as the Supreme Court has recently clarified, the expenditure of resources alone will not meet the test either: "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394. Without more, MSJP has not pled at the level required by this recent Supreme Court caselaw.

The pleadings in this case are devoid of the sort of factual material necessarily and customarily pleaded to confer standing. At the outset, there are no allegations that this suit is authorized by MSJP. MSJP pleads remarkably little about its organization purpose, and it does not tie that purpose into its proposed Homecoming Parade float. It does not discuss how that purpose has been or will be affected. MSJP does not allege precisely how it was harmed, nor does it say how the relief requested would remedy that alleged organizational injury. For example, it does not

plead that it was unable to convey its message in 2024, or that it will be unable to do so in 2025. To the contrary, MSJP pleads that it *was* able to demonstrate and convey its message last year. Compl. ¶ 76.

In short, even assuming that MSJP is an organization, the pleadings here lack detail showing a concrete, particularized injury to MSJP itself. MSJP cannot leave the University—and this Court—to speculate how the prongs of the standing inquiry are met. The relevant factual material must be in the pleadings, but it is not there. That jurisdictional defect warrants dismissal of Count I and Count II in the Complaint.

## II.    MSJP's claim for injunctive relief (Count II) fails because it has not alleged that it lacks an adequate remedy at law.

MSJP's injunctive claim (Count II) fails because it maintains an adequate legal remedy in the form of damages. It does not claim otherwise, preventing invocation of equitable powers.

"Equitable relief in a federal court is of course subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery," and "a plain, adequate and complete remedy at law must be wanting." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) (cleaned up). As the Ninth Circuit recently explained, the equitable powers of federal courts may not be enlarged to allow claims to proceed when a plaintiff fails to plead an adequate remedy at law. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-45 (9th Cir. 2020) ("[W]e hold that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests" equitable relief.).

Courts regularly dismiss equitable claims where the plaintiff fails, as here, to plead that its legal remedies are inadequate. *See Timber Ridge Escapes, LLC v. Quality Structures of Arkansas, LLC*, 2017 WL 11666486, at *6 (W.D.Mo. Nov. 22, 2017) (dismissing equitable remedy where

party did "not allege in its counterclaim, nor does it argue in its suggestion in opposition, that it has no adequate remedy at law"). That is because "[i]njunctive relief is not appropriate where an adequate remedy at law exists." *Kapacs v. Jurevica*, 2016 WL 11491366, at *4 (D. Minn. Jan. 27, 2016), *report and recommendation adopted*, 2016 WL 829911 (D. Minn. Mar. 1, 2016), *aff'd*, 676 F. App'x 610 (8th Cir. 2017).

Here, MSJP has not alleged that its damages remedy is inadequate. To the contrary, it expressly seek damages in Count I of its Complaint, then again in its Prayer for Relief. At no point does it state that those legal remedies would be inadequate if it was not able to participate in the 2025 Parade. That common and customary pleading—and the accompanying factual material—is noticeably lacking here. Therefore, MSJP cannot call upon this Court's equitable jurisdiction. That warrants dismissal of Count II in the Complaint, and the denial of any request for injunctive relief.

III. **Dr. Choi is entitled to qualified immunity on MSJP's claims under 42 U.S.C. § 1983 because MSJP does not adequately plead a constitutional violation, and MSJP's request for an injunction fails for the same reason.**

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Nash v. Folsom*, 92 F.4th 746, 753-54 (8th Cir. 2024). "In resolving a qualified immunity defense, the court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right." *McDonald v. Missouri Dep't of Corr.*, 742 F. Supp. 3d 951, 960-61 (E.D. Mo. 2024). At the motion to dismiss stage, a defendant must show that immunity is established "on the face of the complaint." *Dollar Loan Ctr. of S.D., LLC v. Afdahl*, 933 F.3d 1019, 1024 (8th Cir. 2019) (citation omitted).

Here, MSJP cannot make out a violation of a constitutional right, because the pleadings clearly show that the Homecoming Parade is government speech, and thus not subject to forum

analysis under the First Amendment. Alternatively, the pleadings show that the Parade is a non-public forum, in which case there is still no First Amendment violation, because the University's policy limiting participation is both reasonable in light of those purposes and viewpoint neutral, so it easily survives scrutiny under either the limited public forum or nonpublic forum framework.

Accordingly, Count I should be dismissed because University officials are entitled to qualified immunity, as MSJP cannot plausibly allege a violation of a clearly established constitutional right. Count II should also be dismissed because an injunction cannot issue in this case absent a showing of a constitutional violation.

### A.    Dismissal is appropriate because the pleadings clearly show that the Parade is government speech.

Even construing the pleadings in MSJP's favor, the Homecoming Parade is plainly government speech. In both 2024 and 2025, the Homecoming Parade has been a University-hosted and University-organized event designed to highlight the institution's achievements and rally support for its community before a football game. *See* Compl. ¶ 18 ("The University of Missouri has hosted an annual homecoming celebration for over 100 years."). The University maintains a selection process, and spots are limited.  *Id*. ¶¶ 21-24. The University President controls who participates. *Id*. ¶ 64. There are no allegations that the event has ever been opened to the public.

The University's 2025 Homecoming Parade Policy (the "Parade Policy") explains that the Parade is "an activity of the University" that is "administered by the Office of Alumni Engagement … in collaboration with the Mizzou Alumni Association." Dkt. 14–7, at 2.[1] The policy provides that the Parade is "an expression of the University … accomplished with assistance of participating

---

[1] MSJP did not attach the policy to its pleadings. But this Court may still rely on the policy itself, because "[i]n adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints." *Dittmer Properties, L.P. v. F.D.I.C.,* 708 F.3d 1011, 1021 (8th Cir. 2013). In particular, the Court may consider "matters incorporated by reference or integral to the claim," such as the Homecoming Parade Policy, which is referred to throughout MSJP's Complaint here. *Id*. (citations omitted).

groups." *Id.* The University applies for the parade permit and is responsible for funding, organizing, and hosting the parade. *Id.*

Because the University is plainly the speaker, MSJP's First Amendment challenges fail as a matter of law. Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.2.5 (7th ed.) ("The Supreme Court has held that when the government is the speaker the First Amendment does not apply at all or provide a basis for challenging the government's action."); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009); *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015); *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243, 252 (2022). In its preliminary injunction briefing, MSJP agrees, conceding that if the parade is government speech, the inquiry will end. Dkt. 14, at 4–5.

Under any reading of the pleadings and the Parade Policy, the Parade is put on *by* the University, is *about* the University, and *promotes* the University during Homecoming. The University has, by constant tradition, controlled each of those elements for decades, and has codified those requirements by adopting the Parade Policy in 2025. The pleadings do not offer any factual material otherwise.

Moreover, the University may exercise its speech even when, as here, "it receives assistance from private sources for the purpose of delivering a government-controlled message." *Pleasant Grove,* 555 U.S. at 469. As such, the University is entitled to select the private sources it wishes to use for purposes of delivering those messages. By hosting the parade and selecting its participants, the University is "not simply managing government property, but instead is engaging in expressive conduct." *Walker*, 576 U.S. at 216.

The Supreme Court has said that certain factors point to speech being government speech. Even construing the allegations in MSJP's favor, all of the factors identified by the Supreme Court weigh in favor of the University here. First and foremost, the Supreme Court says to look "to the

policy and practice of the government." *Walker*, 576 U.S. at 215-16. Under the Homecoming Parade Policy, and by tradition, the government is the speaker, and contrary to MSJP's conclusions that the event is open, all factual material points to this being an activity by the University, for the University, limited to University invitees. Moreover, the Parade Policy expressly *disavows* being a public forum by unambiguously stating that the Parade "is not an open forum for expression on topics identified by participants, but rather is limited to expression on topics identified by the University" in the policy. Dkt. 14–7, at 2.

These portions of the Parade Policy are of paramount significance. In *Shurtleff*, the Supreme Court emphasized that the critical test—which the Supreme Court in fact called "the most salient feature of [the] case"—is whether the Government made "clear it wished to speak for itself." 596 U.S. at 257. The Supreme Court ruled against the City of Boston, in part, because it did not have a written policy stating that it was speaking on its own behalf with the flags. *Id.* The Supreme Court explained that the situation would be different if the city had confirmed in writing—like the City of San Jose did (and like the University did here)—that its flagpoles "[a]re not intended to serve as a forum for free expression by the public." *Id.* The Parade Policy here contains similar language.

The Supreme Court has emphasized that it is "significant" whether the government "maintain[s] control over the selection" of messages. *Walker*, 576 U.S. at 210. In both years (2024 and 2025), that approval rested with the University President and Chancellor, Dr. Mun Choi. The University has not "relinquished control to private actors," nor has it "maintained a passive role"— two of the only factors that can undermine a determination that the University controls the message—and MSJP does not (and cannot) plead otherwise. *Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1081–82 (8th Cir. 2024). This final-approval authority confirms that the University is "choos[ing] how to present itself and its constituency," which is the hallmark of government

speech. *Walker*, 576 U.S. at 213. The government here is shaping and controlling the expression by curating parade participants to project a unified, pro-Mizzou message. *Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1082 (8th Cir. 2024) (noting that "[g]overnment speech requires that a government shape and control the expression," and finding it instructive that "Texas had a review process and final approval authority over the content of the plates").

Additionally, the Supreme Court has made clear that "the public's likely perception as to who (the government or a private person) is speaking" should be considered. *Shurtleff*, 596 U.S. at 252. That, too, weighs in the University's favor. A reasonable observer at the parade would naturally conclude that the University is the speaker, since the University obtains the permit, funds the event, sets the theme, and orchestrates the proceedings as a central part of Homecoming—a multi-day event focused on the University and its football team. *Leake v. Drinkard*, 14 F.4th 1242, 1253 (11th Cir. 2021) (noting that "the Sons of the Confederate Veterans cannot force the City to include a Confederate battle flag in the veterans parades it funds and organizes") (cleaned up).

In *Leake*, the Eleventh Circuit held that the Sons of Confederate Veterans could be excluded from a parade that a city funded and organized because that parade was government speech. *Id.* at 1253. To hold otherwise, the Eleventh Circuit said, would be to hold that "anytime the government seeks to organize an event by bringing private parties together to communicate a message the government wants expressed, it must allow the participation of other parties that will express the *opposite* message." *Id.* at 1252 (emphasis added). The case noted the history of "government-sponsored parades" and found it significant that the city had identified itself as the host. *Id.* at 1249, 1252. A similar result was reached by the District of Utah in *Martinez v. Draper City*, 2017 WL 3128806 (D. Utah July 21, 2017), in a case involving a city-hosted parade. The parade there—precisely like the Homecoming Parade here—was "funded, organized, and carried out" by the city. *Id.* at *3. The Court noted that residents "would readily associate the Parade with

Draper City," much like the Parade here would be associated with the University. *Id.* In another parallel, the city had adopted a policy which allowed "currently serving city officials" into the parade, but not political candidates. *Id.* at *1. The court found the existence of a policy significant, noting that the city "maintains a degree of control over the messages conveyed in the parade." *Id.* at *3. That is similar to the Parade Policy here, which allows elected officials, but which bars political campaigns. Dkt. 14-7.

Finally, the Supreme Court has indicated that courts should look at "the history of the expression at issue." *Shurtleff*, 596 U.S. at 252. The history outlined in the pleadings show that this has always been speech by the University. The pleadings provide that the University "has *hosted* an annual homecoming celebration for over 100 years." Compl. ¶ 18 (emphasis added). MSJP offers conclusions that the Homecoming Parade has "long been a place" for political expression and "welcomed political campaigns and activist groups," but those are legal conclusions to be set aside at the motion to dismiss stage, and there is no factual matter to support a history of that, beyond a laundry list of attendees at *only* the 2024 event. Compl. ¶¶ 19-20, 68. Without that factual matter, it is clear that the University, as the host, is the speaker, for the same reasons as the parades in *Leake* and *Martinez.*

The Parade is, and always has been, about the University and its football game, not a political free-for-all. A simple example inspired by the Supreme Court demonstrates the point. The Supreme Court explained that, if government speech were not exempted from the First Amendment's Free Speech Clause, "Boston could not easily congratulate the Red Sox on a victory were the city powerless to decline to simultaneously transmit the views of disappointed Yankees fans." *Shurtleff*, 596 U.S. at 251–52. In a similar vein, the Homecoming Parade at Mizzou has never been an open forum. Otherwise, it would be required to allow the floats of other universities, such as the University of Kansas. But the century-long absence of a Jayhawk on the parade route,

and the certainty that none will appear, underscores that the Parade is and has always been the University's own message, not an open platform for every viewpoint.

MSJP's legal conclusions otherwise are to be accorded no weight. *Iqbal*, 556 U.S. at 678. Only pleaded factual material is to be accepted as true, but that material confirms that both the 2024 and 2025 Parades are government speech. Dismissal is appropriate as a matter of law because Plaintiff's First Amendments rights are not at issue when the government speaks.

**B.    Even if a First Amendment analysis were relevant (and it is not), dismissal would still be appropriate because the Parade is a non-public forum.**

Because the Homecoming Parade is government speech, "forum analysis is misplaced here." *Walker*, 576 U.S. at 215. But even if this Court disagrees, the pleadings cannot show more than that the Parade is a nonpublic forum. Plaintiff's allegations do not satisfy the pleading requirements for a First Amendment violation for speech in a nonpublic forum.

Under Supreme Court and Eighth Circuit precedent, a traditional public forum is one in which "has the physical characteristics of a public thoroughfare," "the objective use and purpose of open public access," and has been "traditionally … used for expressive conduct." *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006) (cleaned up). Examples would be "streets, sidewalks, and parks." *Id.* MSJP does not contend that the Parade is an open public forum.

A designated nonpublic forum is one that the "government intentionally opens to expressive activity for a limited purpose such as use by certain groups or use for discussion of certain subjects." *Id.* A designated nonpublic forum can be unlimited or limited, with the latter occurring where "the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Id.* at 976. A nonpublic forum is property "which is not classified [as] a traditional public forum or designated public forum." *Id.* A key consideration is whether the area has been opened "for public discourse." *Id.* at 978.

MSJP pleads that the parade is an "*unlimited* designated public forum because it is intentionally open to the public for expressive activity and is open to all, not just a particular type of speech of [sic] speaker." Compl. ¶¶ 89 (emphasis added). But that is a legal conclusion, and there is no factual material pled to support it. MSJP does not—and cannot—plead factual material to support its conclusion that the Parade is "open to all." That has not been the case in recent history (and possibly in all of history), and the Parade Policy restricts participation to a narrow and invited list of persons and groups who must apply and "[s]how how the[ir] proposed entry is consistent with the theme / topics for the parade." Dkt. 14–7 at 2. Even MSJP's pleadings show that attendance is restricted and subject to University approval following a selection process. Compl. ¶¶ 11 (noting that the President retained ultimate approval); 22-24 (noting the application process)

If the Parade is not deemed to be government speech, it is either a designated nonpublic forum or a nonpublic forum. The distinction will not, for purposes of this case, matter. Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.4.1 (7th ed.) (noting it is possible the Supreme Court has "collapsed nonpublic forums into the category of limited public forums since the test for both would be the same"); *Bowman*, 444 F.3d at 976 (noting the restrictions on speech in "a limited public forum must only be reasonable and viewpoint neutral" and that in a nonpublic forum the restrictions must be "reasonable" and "not an effort to suppress expression merely because the public officials oppose a speaker's view") (cleaned up).

Here, the Parade is government speech, but if the court disagrees, it is a nonpublic forum, because the University has not opened it for public discourse. *Id*. Thus, even under forum analysis, the University's decision to exclude MSJP is constitutional. The Parade is not a venue for indiscriminate expressive activity, but rather a curated event designed to advance the University's own celebratory purposes. Because the policy limiting participation is both reasonable in light of those purposes and viewpoint neutral, it easily survives scrutiny.

12

MSJP says it was treated differently because of its viewpoint. Compl. ¶ 62. But once again, that is a conclusion devoid of factual enhancement. MSJP does not—and cannot—offer facts to show that the University or University President disfavor their point of view. They do not—and cannot—show that any opposing view has been allowed into the parade. The Parade Policy itself does not mention viewpoints, other than to prescribe that participants should support the University. Otherwise, their allegations of viewpoint discrimination fail.

The reason for MSJP's denial was concerns about safety and disruption. MSJP pleads as much. Compl. ¶¶ 60 ("University officials repeatedly voiced vague and baseless concerns over the safety of MSJP members…"), 65 (quoting the 2024 denial email). Safety is indisputably a significant government interest. *Bowman*, 444 F.3d at 980 (observing that there is a "significant interest is in ensuring public safety" because "[l]ike education, safety is a fundamental human need without which the desire to speak one's mind becomes moot"). MSJP claims that this concern was "pretextual." Compl. ¶ 75. But that too is a conclusion to be given no weight, *Iqbal*, 556 U.S. at 678, and MSJP pleads no accompanying facts. And, significantly, they make no attempt to plead facts that the event would in fact be safe or that the safety concerns were unjustified.

Accordingly, MSJP's forum-based challenge fails.

## IV.    Dr. Choi is entitled to qualified immunity on MSJP's damages claims (Count I) under 42 U.S.C. § 1983 because there was no "clearly established" right for MSJP to participate in the 2024 Parade.

"Qualified immunity from personal damage liability gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lyons v. Vaught*, 875 F.3d 1168, 1172 (8th Cir. 2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Qualified immunity attaches when an official's conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Id*. (citations omitted).

"[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017). "A right is clearly established when the contours of the right are sufficiently clear so that a reasonable official would understand that what he is doing violates that right." *Grooms v. Privette*, 2024 WL 1940179, at *4 (W.D. Mo. May 2, 2024) (cleaned up), aff'd, 127 F.4th 730 (8th Cir. 2025). "In other words, in the light of pre-existing law the unlawfulness must be apparent." *Id.*

At the motion to dismiss stage, "[q]ualified immunity attaches if the defendants' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Grooms*, 127 F.4th 730, 733 (8th Cir. 2025). This can be apparent on the face of the complaint. *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017).

MSJP's complaint does *not* plead factual material that would give rise to a clearly established right. Of note, it does not even plead the conclusion that there *was* a clearly established right. MSJP cites no precedent that establishes facts remotely akin to the situation here. At most, it asserts a generalized free speech interest—one that fails for the reasons set forth above. But even if MSJP did make out a violation of its constitutional rights (and it does not) that level of generality is insufficient: the Supreme Court has repeatedly stated that in evaluating whether there is "clearly established law," the law cannot be "defined at a high level of generality," but must be "particularized to the facts of the case." *White*, 580 U.S. at 79 (cleaned up).

As set forth above, the Homecoming Parade is a curated, University-managed event with limited spaces, eligibility rules, and a formal application process. The Complaint acknowledges that even before the 2025 Parade Policy was adopted, the University President retained discretion to approve or deny applications, and that the University controlled entry into the Homecoming Parade. Compl. ¶¶ 11 (noting that the President retained ultimate approval); 18 (noting that the University hosts the parade); 22-24 (noting the application process). It is apparent that the

University believed it was engaging in government speech, and while MSJP tries to paint the parade as a forum, there is no caselaw in its favor putting that beyond debate. In fact, parade cases identified by the parties have gone in the University's favor: they find that the parades in those cases are government speech. *Leake*, 14 F.4th at 1253; *Martinez*, 2017 WL 3128806, at \*3.

Furthermore, no court appears to have held that excluding a student group from a university parade constitutes viewpoint discrimination in violation of the First Amendment under these circumstances (or even under similar circumstances). And further still, there is no caselaw overriding the safety and order-management concerns justifiably relied upon by the University President here. Thus, even if MSJP disagrees with those concerns, the fact remains that the University considered them part of its decision-making process, and MSJP admits as much. Compl. ¶¶ 60, 65. Nothing in the Complaint suggests that any court has held those kinds of considerations in the parade context to be unconstitutional.

Without any similar precedent, the alleged unlawfulness of the Dr. Choi's conduct could not have been apparent to a reasonable official. MSJP, in essence, asking this Court to break new ground by declaring for the first time that a registered student organization has a clearly established constitutional right to march in a university-sponsored parade, regardless of university discretion or safety concerns. But a right cannot be "clearly established" when its contours have never been defined by controlling precedent. *At best, MSJP invokes broad principles of free expression, but those abstractions cannot substitute for on-point authority.* By attempting to stretch general First Amendment doctrine into a new factual setting, MSJP confirms that it is pressing for an extension of the law—not the enforcement of a right that was already beyond debate. That is precisely the circumstance in which qualified immunity applies.

## CONCLUSION

For the reasons set forth above, MSJP's Complaint should be dismissed in its entirety.

Date: September 18, 2025

SHOOK, HARDY & BACON L.L.P.

By: _/s/ Christopher R. Wray_____
Holly Pauling Smith, MO Bar #51340
Christopher R. Wray, MO Bar #66341
Burcu Yalcin Erbaz, MO Bar #74913
2555 Grand Boulevard
Kansas City, Missouri 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
hpsmith@shb.com
cwray@shb.com
berbaz@shb.com

*Attorneys for Defendant Dr. Mun Y. Choi,*
*President of the University of Missouri School*
*System and Chancellor of the University of*
*Missouri*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2025, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system, which sent electronic notification of this filing to all attorneys of record.

*/s/* Christopher R. Wray
*Attorney for Defendant*
