IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MIZZOU STUDENTS FOR JUSTICE IN PALESTINE, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No. 25-cv-04184-SRB |
| MUN Y. CHOI, *President of the University of Missouri School System and Chancellor of the University of Missouri, in his individual and official capacity*, | ) ) ) ) ) ) ) |
| Defendant. | ) |

## ORDER

"Without freedom of thought, there can be no such thing as wisdom—and no such thing as public liberty without freedom of speech." - Benjamin Franklin

Before the Court is Plaintiff Mizzou Students for Justice in Palestine's ("MSJP") Motion for Preliminary Injunction. (Doc. #12.) MSJP twice applied to be a participant in Mizzou's storied Homecoming Parade, and twice University of Missouri President Dr. Mun Y. Choi ("Dr. Choi") personally denied MSJP's application based on safety concerns with the organization's former President and campus violence elsewhere in the Nation. Because the First Amendment's Free Speech Clause provides that a governmental entity "shall make no law . . . abridging the freedom of speech," MSJP's Motion is GRANTED.

I.  BACKGROUND

On September 16, 2025, the Court presided over a lengthy hearing on the pending motion. The parties appeared through counsel. MSJP called three witnesses and introduced several exhibits in support of its motion. Dr. Choi cross-examined MSJP's witnesses and introduced exhibits to support his position.

In 2024, Dr. Choi denied MSJP's application to participate in the annual Homecoming Parade at the University of Missouri ("the University" or "MU"). Dr. Choi has again denied MSJP's application to participate in this year's parade and that denial is the basis for this pending preliminary injunction motion.

For purposes of this injunction request, the relevant facts are set forth below. The Court notes, however, that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995) (citation omitted).

MSJP is a registered student organization and is dedicated to advocating for Palestinian rights by raising "awareness on campus of the historical and ongoing injustices committed against Palestinians." (Doc. #1, p. 5.) MSJP's activity on campus has increased dramatically since the war between Israel and Hamas began in 2023. MSJP has hosted dozens of events, including "marches, lectures, and panel discussions." (Doc. #1, p. 5.) Testimony revealed that the University worked closely with MSJP to allow for fifty violence-free marches.

The University hosts an annual Homecoming Parade, a tradition that originates at MU and has been replicated across the country. In the fall of 2024, MSJP applied to be part of the Homecoming Parade for the first time. MSJP planned to perform a traditional Palestinian dance and pass out Palestinian sweets. It also planned on displaying signs that read "Ceasefire Now" and "Stop the Genocide." (Doc. #1, p. 8.) MSJP received communications from the 2024 Parade Committee that made it appear to the group's members that its application had been accepted. Weeks later University officials required MSJP members to attend a meeting about its involvement and plans for the Homecoming Parade. While the University officials appeared to have no issue with the cultural dance and sweets, MSJP was told that it could not display the

"Stop the Genocide" sign. MSJP members refused to alter their plans or the content of their speech.

About a week after that meeting, Dr. Choi, the Chancellor of the University, emailed MSJP and informed the group that he had decided to deny MSJP's application to participate in the 2024 Homecoming Parade. In that email, Dr. Choi cited "events around the country . . . [where] significant disturbances have occurred" and that some of those "disturbances were caused by members and/or supporters of [Justice of Palestine organizations] . . . or by counterdemonstrators[.]" (Doc. #14-3, p. 2.) Dr. Choi also referenced actions of "some MSJP members" at a campus event and his desire to ensure the "safety" of MSJP members and the Homecoming Parade spectators. (Doc. #14-3, p. 2.) Ultimately, MSJP was the only group excluded from the 2024 Homecoming Parade, while participants celebrating a variety of causes from the Make America Great Again movement to pro-life and pro-choice groups were allowed to participate. According to testimony, MU did not endorse any of these views.

After last year's Homecoming Parade, the University implemented a new Homecoming Parade Policy ("Parade Policy"). The Parade Policy states that the "purposes of the Parade are to:

    A. Celebrate MU's traditions and accomplishments;
    B. Cultivate alumni connections to the institution;
    C. Honor University-selected achievements of MU students, personnel, and/or alumni;
    D. Rally support and enthusiasm for the Homecoming football game[.]"

(Doc. #14-7, p. 2.) It also specifies a theme of "Celebrating Black and Gold." (Doc. #12-7, p. 2.)

MSJP applied to participate in the 2025 Homecoming Parade and planned to present substantially the same display as last year, including performing the Palestinian cultural dance and handing out sweets and bracelets. *See* (Doc. #14-6, p. 1.) On September 8, 2025, MSJP

3

received a notice that "due to safety concerns for members of [MSJP] and other homecoming participants[,]" its application was denied. (Doc. #13-1, p. 2.) MSJP's lawsuit states it plans for additional signage that differs from its application.

During the hearing, MSJP called former MSJP President, Isleen Atallah ("Atallah"), Dr. Choi, and the Executive Director of the Mizzou Alumni Association, Todd McCubbin ("McCubbin") as witnesses. MSJP elicited testimony regarding Atallah's behavior on campus and MSJP's intentions for the 2024 Homecoming Parade. It also elicited testimony from Dr. Choi about his reasoning for not allowing MSJP to participate in the 2024 or 2025 parade, and McCubbin's involvement with those decisions. For his part, Dr. Choi largely focused his questioning of those same witnesses on why MSJP presented a safety risk for parade participants and onlookers.

In seeking injunctive relief, MSJP claims that Dr. Choi's denial of its application to participate in the 2025 Homecoming Parade is a violation of its First Amendment right to free speech. MSJP seeks from the Court an order enjoining the University from prohibiting MSJP from participating in the 2025 Homecoming Parade.

## II. LEGAL STANDARD

The Court has authority to issue a preliminary injunction under Federal Rule of Civil Procedure 65(a). A preliminary injunction "is an extraordinary remedy," and the burden of establishing the propriety of such equitable relief is on the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). In determining the propriety of a preliminary injunction, the Court considers four factors:

(1) the likelihood of the movant's success on the merits;
(2) the threat of irreparable harm to the movant in the absence of relief;
(3) the balance between that harm and the harm that the relief would cause to the other litigants; and

(4) the public interest.

*Id.* (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).

Generally, while no single factor is determinative, the "probability of success factor is the most significant." *Schmitt v. Rebertus*, No. 24-2707, 2025 WL 2352582, at *5 (8th Cir. Aug. 14, 2025) (citing *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013)).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

MSJP must show that it has a "fair chance" of prevailing on the merits. *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1017 (8th Cir. 2022). To show a fair chance, MSJP must show that its claims provide "fair ground for litigation, but it need not show that it has a greater than fifty per cent likelihood of success." *Id.* (internal citation and quotation omitted). To prevail on the merits, MSJP must show that Dr. Choi's denial of its participation in the 2025 Homecoming Parade violates the First Amendment's Free Speech Clause.

##### 1. Government Speech vs. Private Speech

The First Amendment's Free Speech Clause provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Free Speech Clause restricts the government's regulation of private speech, but does not regulate government speech.[1] *See Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1079 (8th Cir. 2024). Therefore, the Court must first determine whether the Homecoming Parade is government speech or private speech. MSJP argues that the parade "lacks the characteristics of government speech[.]" (Doc. #14, p. 9.) Dr. Choi argues that "[u]nder the Parade Policy, the Parade is put on *by* the University, is *about* the

---

[1] The parties do not dispute that the University is a governmental entity subject to the First Amendment.

University, and *promotes* the University during Homecoming[,]" and therefore, is government speech. (Doc. #21, p. 8) (emphasis in original).

In determining whether "the government intends to speak for itself or to regulate private expression[,]" [this Court] . . . is driven by a case's context rather than the rote application of rigid factors [and looks to] . . . the history of expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243, 252 (2022).

### a. History of Expression

Under the history of the expression at issue factor, the Court looks to both the specific history of the MU Homecoming Parade and homecoming parades in general. MSJP argues that homecoming parades, in general, are "only a century old and did not originate with the government" and that furthermore, they have "also traditionally included participation and expression from all corners of a university's campus and its surrounding community." (Doc. #14, pp. 9-10.) As to MU's Homecoming Parade, MSJP argues that it has historically "included a wide range of parade floats from student groups and the public" and has been "a vehicle for protest in 1990, for example, when the Legion of Black Collegians marched in protest of racial injustices at MU." (Doc. #14, p. 10.) Dr. Choi argues that the "[Homecoming P]arade is, and always has been, about the University and its football game, not a political free-for-all." (Doc. #21, p. 11.)

The Court agrees with MSJP that the general history of homecoming parades, and specifically the Homecoming Parade at MU, better supports MSJP's argument that the Homecoming Parade is private speech. First, there is scant evidence that the government has

"traditionally controlled and communicated messages" through homecoming parades. *Cajune*, 105 F.4th at 1079; *see also Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 211 (2015) (examining whether license plates have long "communicated messages" from states). MSJP directs the Court to various articles detailing the history of homecoming parades at both public and private universities. These sources demonstrate that such events have typically featured a broad array of participants—including student groups, alumni, and community organizations—representing diverse, and often divergent, messages.[2] This tradition of diverse participation stands in contrast with government-sponsored military parades, for example, which have a long tradition of communicating a more singular message to "celebrate [a nation's] militaries." *Leake v. Drinkard*, 14 F.4th 1242, 1248 (11th Cir. 2021).

As for the MU Homecoming Parade, it has a history of welcoming a diverse group of parade entries, as well. In 1990, the Legion of Black Collegians led a march against racial injustices during the Homecoming Parade.[3] In 2023, a Columbia resident described the Homecoming Parade participants to include a former city councilwoman in a suffragette costume, an LGBTQ group with dance music and a drag queen, and then lieutenant-governor,

---

[2] *See, e.g.*, *History of Homecoming*, BAYLOR UNIV., https://homecoming.web.baylor.edu/welcome/history-homecoming (last visited Sept. 15, 2025) ("Parade entries numbered well over 130, with 60 each of automobiles and carriages, plus student organizations on foot."). The Court also found a similar history at the University of Minnesota and Brigham Young University ("BYU"). *History*, UNIV. MINN., https://homecoming.umn.edu/about/history (last visited Sept. 15, 2025) (In 1942, [T]he Homecoming Parade was billed as the world's largest parade at two miles long with 170 cars and floats."); *see also*, *In Step with the Homecoming Parade*, BYU, https://magazine.byu.edu/article/in-step-with-the-homecoming-parade/ (last visited Sept. 15, 2025) (discussing various aspects of the history of BYU Homecoming parade including that the "BYU folk dancers stand out with a long streak of winning floats[,]" a float made out of cake in 1968, and that "[a] Homecoming parade should be an event that involves students, alumni, and the community[.]").

[3] *A Timeline: 112 Years of MU Homecoming*, THE MANEATER, https://themaneater.com/116076/move/a-timeline-112-years-of-mu-homecoming/ (last visited Sept. 17, 2025).

Republican Mike Kehoe, with "a crew politicking for his run for governor."[4] In 2024, parade-walkers held signs advocating for a "yes" vote on Amendment 3 (a ballot measure to protect the right to abortion) and for national political candidates.[5] At the hearing, Dr. Choi and McCubbin stated that MU's Homecoming Parade has historically had campaigners for public office, student political organizations with opposing viewpoints, for-profit sponsors, non-profit organizations, and student affinity groups. Further, when the Court asked McCubbin whether the University had endorsed past political floats, he answered "no." Tr. 153:8, September 16, 2025. Essentially, the Homecoming Parade was "opened . . . for citizens to express their own views." *Shurtleff*, 596 U.S. at 248; *but see Leake*, 14 F.4th at 1249 (determining that the city's Veteran's Day Parade has long "fit[] within the general history of government-sponsored [military] parades" because its "purpose and message" have always been the same). Under this history, the Court finds that the history of expression factor weighs in favor of MSJP.

### b. Public's Likely Perception

Under the public's likely perception factor, the Court looks to whether the public would reasonably perceive the Homecoming Parade as the government's speech. *Shurtleff*, 596 U.S. at 252. MSJP argues that "[i]t would be incoherent, and ultimately untenable for [Dr.] Choi to assert that participants in the Mizzou Homecoming Parade convey some message on the government's behalf, when the parade features all manner of controversial or partisan political expression[.]" (Doc. #14, p. 12) (internal quotes and citation omitted). Dr. Choi argues that "[a] reasonable observer at the parade would naturally conclude that the University is the speaker,

---

[4] *MU Homecoming Parade Brings Some Nostalgia and Politicking*, COLUMBIA MISSOURIAN, https://www.columbiamissourian.com/opinion/local_columnists/mu-homecoming-parade-brings-some-nostalgia-and-politicking/article_d98157c8-72cc-11ee-9415-d3f0b02a552d.html (last visited Sept. 17, 2025).

[5] *Politics and Tradition Collide at MU Homecoming Parade*, COLUMBIA MISSOURIAN, https://www.columbiamissourian.com/news/higher_education/politics-and-tradition-collide-at-mu-homecoming-parade/article_ee54cd96-8e15-11ef-9a35-c7701e13d20b.html (last visited Sept. 17, 2025).

since the University obtains the permit, funds the event, sets the theme, and orchestrates the proceedings as a central part of Homecoming—a multi-day event focused on the University and its football team." (Doc. #21, p. 10.)

The Court finds that the public would not "tend to view" the Homecoming Parade as the government speaking because the public seems unlikely to view the parade as "conveying some message" on the government's behalf. *Shurtleff*, 596 U.S. at 255. Historically, the Homecoming Parade has featured a wide range of participants, including student and political groups, community organizations, and for-profit businesses. While the Parade Policy prohibits active campaigning this year, it still features a diverse mix of "invited participants" such as the Oscar Mayer Wienermobile and elected officials, neither of which are explicitly listed on the Parade Policy. *See* (Doc. #14-7, pp. 2-3.) The parade will also feature "paid sponsors" such as "HotBox Cookies," and community organizations such as "Columbia Christian Academy" and "Columbia Youth Lacrosse." (Doc. #25, pp. 1, 2.) The public does not tend to view MU as endorsing a sitting congressman, the Oscar Mayer Weinermobile, or a private Christian school just because they appear in its Homecoming Parade.

The notion that the Homecoming Parade expresses a coherent governmental message is unpersuasive. Indeed, if MU was expressing a message, given the variety of participants, it would be one that is "babbling prodigiously and incoherently." *Matal v. Tam*, 582 U.S. 218, 219, 236 (2017) (concluding that if trademarks registered by the Patent and Trademark Office were government speech, the government would be "unashamedly endorsing a vast array of commercial products and services."); *see also GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660, 668 (8th Cir. 2024) (finding that the inclusion or removal of books is not

government speech as a "well-appointed school library" could have books on the same topic that express opposing viewpoints).

While Dr. Choi asserts the public would view the Homecoming Parade as government speech since the University funds and provides permits for the event, those administrative acts, standing alone, do not transform private speech into government speech. *See Cajune*, 105 F.4th at 1075, 1081 (holding that Black Lives Matter remained private speech notwithstanding the school district's funding of the posters and inclusion of its "logo, slogan, website link, and a statement" about how the posters align with school board policy). Likewise, the University's decision to fund the parade, select its theme, and coordinate logistics does not render the event government speech. As in *Cajun*, the Court cannot conclude that the Homecoming Parade is government speech "solely on the basis that [the University] affixed its seal of approval." *Id.* at 1081. The Court finds the public's likely perception factor weighs in favor of MSJP.

### c. The Extent to which the University has Shaped or Controlled the Expression

Under the extent to which the government has shaped or controlled the expression of the Homecoming Parade, the Court looks to the role Dr. Choi plays in shaping the Homecoming Parade. *Shurtleff*, 596 U.S. at 252. MSJP argues that "[Dr.] Choi plays little-to-no role in actively shaping the expression in the 2025 Homecoming Parade" and that there is "no evidence" that new Parade Policy "shapes and controls the messages that will be communicated in the 2025 Homecoming Parade." (Doc. #14, pp. 12, 13) (internal quotes omitted). Dr. Choi argues that the "Parade Policy squarely vests [] control in the University, with [he,] the University President holding final, unreviewable approval." (Doc. #21, p. 9.)

Dr. Choi has historically played little role in actively shaping and controlling the messages in the Homecoming Parade. That is, there is no history that Dr. Choi has "actively

10

exercised" any authority to shape the message of the Homecoming Parade. *Walker*, 576 U.S. at 213 (noting that the Texas Department of Motor Vehicles Board had "rejected at least a dozen proposed [license plate] designs.").

2025 is the first year of this Parade Policy, which provides that Dr. Choi may deny participation to applicants and that his decision is "final." (Doc. #12-7, p. 4.) The Parade Policy also announces a theme, "Celebrating Black and Gold[,]" and enumerates four purposes of the Homecoming Parade. (Doc. #12-7, p. 2.) As this level of control over the details of the event is new, there is some evidence that this factor favors Dr. Choi. *See Shurtleff*, 596 U.S. at 253 (weighing the evidence under each factor).

For the 2025 Homecoming Parade, Dr. Choi has submitted a list of approved, pending, and denied applications. A review of the approved list indicates that the University continues to maintain an inclusive, "come-one-come-all" approach to participation. *Shurtleff*, 596 U.S. at 257. Approved groups include a wide range of entities such as Billy Goat Dumpsters, elected officials, Girl Scouts of Missouri Heartland, Columbia Christian Academy, and the Language Tree Preschool. It is "difficult to discern a connection" between a local dumpster company or preschool and MU. *Shurtleff*, 596 U.S. at 256.

The Parade Policy has been applied broadly and inclusively, with only three student organizations—MSJP, the Brazilian Student Association, and the Spanish Theatre Club—denied participation. (Doc. #25, p. 3.) In total, ten organizations were not approved for participation this year. While this represents the most significant restriction on participation in the parade's history, the selective exclusion of a small number of organizations, when contrasted with the broad acceptance of numerous others, undermines Dr. Choi's argument that the University actively curates or controls the overall message conveyed by the event. As the Eighth Circuit

11

has explained, "the mere existence of a review process with approval authority is insufficient by itself to transform private speech into government speech." *Cajune*, 105 F.4th at 1081. Although the record suggests that the University may be exercising greater control over the 2025 Homecoming Parade compared to years past, the continued inclusion of a wide array of diverse student, non-profit, and for-profit organizations, cuts against a finding of control sufficient enough to make the Homecoming Parade government speech. Therefore, the Court concludes that the control factor weighs in favor of MSJP. Upon consideration of all three *Shurtleff* factors, the Court concludes that the MU Homecoming Parade constitutes private, not government, speech.

### 2. Whether Prohibiting MSJP from the Homecoming Parade Violates the First Amendment

Having determined that the Homecoming Parade is not government speech, the Court turns to whether there's a "fair chance" that Dr. Choi's denial of MSJP's application to participate in the 2025 parade violates the First Amendment. *Sleep No. Corp.*, 33 F.4th at 1017. This inquiry requires the Court to determine what type of "forum" the Homecoming Parade is, and depending on that answer, apply the appropriate standard of scrutiny. *See Bowman v. White*, 444 F.3d 967, 974 (8th Cir. 2006). A forum may be categorized as either a traditional public forum (such as streets, sidewalks, and parks) or a designated public forum. *Bowman*, 444 F.3d at 975. Because neither party contends that the Homecoming Parade constitutes a traditional public forum, the Court need not address that category.

A designated public forum may be either "unlimited" or "limited." *Id*. "The distinction between a limited designated public forum and an unlimited designated public forum is significant because it controls the level of scrutiny given to restrictions on speech." *Id*. at 976.

12

An unlimited designated public forum is one "traditionally open for free expression[] or is designated as a forum for all speakers and topics[.]" *Turning Point USA at Arkansas State Univ. v. Rhodes*, 973 F.3d 868, 875 (8th Cir. 2020). In such forums, any restrictions on speech must be "content-neutral" and narrowly tailored to achieve a significant government interest. *Bowman*, 444 F.3d at 976.

A limited designated public forum,[6] "arises where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Id*. (internal citation omitted). An example of a limited designated public forum may be a "university concert hall" that is "designated for a particular speech by university-supported musicians." *Id*. "In a limited public forum, the government may impose content-neutral restrictions so long as the restrictions are reasonable." *Sessler v. Cty of Davenport, Iowa*, 102 F.4th 876, 882.

MSJP argues that the Homecoming Parade is an unlimited designated public forum and that its exclusion from the parade is "neither content-neutral nor would it be narrowly tailored to serve a compelling government interest." (Doc. #14, p. 16.) MSJP further argues that even if the Homecoming Parade is a limited designated public forum, its "exclusion would still be unconstitutional because it amounts to viewpoint discrimination." (Doc. #14, p. 17.) Dr. Choi argues that "[u]nder any forum standard[,]" his denial of MSJP's participation is valid because "the restriction is necessary to serve [the] significant government interest" of safety. (Doc. #21, p. 13, 20.)

---

[6] Current caselaw seems to suggest that the Supreme Court has "collapsed nonpublic forums into the category of limited public forums since the test for both would be the same." Erwin Chemerinksy, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.4.2.1 (7th ed.) Dr. Choi in his briefing believes the Homecoming Parade is a "nonpublic" forum. (Doc. #21, p. 19.) As limited public forums and nonpublic forums are analyzed under the same standard, the Court analyzes Dr. Choi's decision under the "limited public forum" term.

13

The Court agrees with MSJP that, under either the limited or unlimited designated forum[7] analysis, there is more than a "fair chance" that Dr. Choi's denial of MSJP's participation in the Homecoming Parade violates the First Amendment. *Sleep No. Corp.*, 33 F.4th at 1017.

### a. Unlimited Public Forum

Assuming the Homecoming Parade constitutes an unlimited public forum—open "for all speakers and topics"—the exclusion of MSJP must be narrowly tailored to achieve a "significant" interest. *Bowman*, 444 F.3d at 977; *Sessler*, 102 F.4th at 881. Dr. Choi contends that the denial was based on safety concerns. He cites, both in his briefing and during the hearing, two prior incidents involving Atallah, including one that resulted in a student conduct charge for stalking and a subsequent restriction limiting her presence on campus to academic purposes only. Dr. Choi also references incidents of violence at student protests on other university campuses nationwide as part of his rationale. The Court does not dispute that safety is a "significant [governmental] interest." *See Bowman*, 444 F.3d at 980 ("safety is a fundamental human need[.]"). Dr. Choi failed to identify any specific instance in which MSJP—as a group— or any of its members other than Atallah engaged in conduct that posed a safety risk to the campus community. There is no evidence that Dr. Choi inquired into the disciplinary status of any other member in a student organization that is approved to participate in the parade. The record also reflects that Atallah is no longer the President of MSJP, she has agreed to the probationary status that bars her from campus except for classes, and will not even be present in Missouri during the 2025 Homecoming Parade. MSJP has been a very active group on campus, with over eighty events in the last two years. Dr. Choi could not cite a single instance where

---

[7] The Court notes that in *Shurtleff*, after the Supreme Court concluded that raising flags at Boston City Hall was not government speech, it did not conduct an analysis on which type of forum applied but rather concluded that Boston's refusal to fly Shurtleff's flag amounted to impermissible viewpoint discrimination. *See Shurtleff*, 596 U.S. at 259.

14

MSJP was cited for violating any University policy apart from the two instances involving Atallah, whose presence on campus is now greatly restricted.

In light of this record, the Court agrees with MSJP that Dr. Choi's decision to exclude the organization in its entirety is not narrowly tailored to the stated interest of safety. Dr. Choi "could, instead, forbid the specific student(s) giving rise to [safety] concerns" from participating, which this Court assumes will happen based on prior restrictions and Atallah's absence from the state during Homecoming weekend. (Doc. #14, p. 17.) Accordingly, assuming the Homecoming Parade is an unlimited public forum, the Court finds that the exclusion of MSJP is "insufficiently narrowly tailored to survive." *Id*. at 983.

### b. Limited Public Forum

Assuming the Homecoming Parade constitutes a "limited public forum"—open for "expressive activity [on] certain kinds of speakers or to the discussion of certain subjects"—any restriction must be "reasonable" and "content-neutral." *Bowman*, 444 F.3d at 980; *Sessler*, 102 F.4th at 882. While the University may impose content-based restrictions, it cannot engage in "viewpoint discrimination[,]" which arises when the "government targets 'particular views taken by speakers on a subject.'" *Viewpoint Neutrality Now! v. Regents of Univ. of Minnesota*, 516 F. Supp. 3d 904, 919 (D. Minn. 2021) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). Therefore, if the University "restrict[s the Homecoming Parade] to a particular type of speaker . . . or a particular subject (e.g., ["Celebrating Black and Gold]), the University cannot then exclude speakers based on their ideology . . . or based on their viewpoint. *Id*.

The Court finds MSJP has presented sufficient evidence to show a "fair chance" that Dr. Choi excluded MSJP for its viewpoint on Palestine and Israel. In support of this conclusion, the

15

Court notes that, in 2024, Dr. Choi did not require any other student organization to attend a special meeting to discuss their intentions for the event, nor did he request that any other group modify its message. Although Dr. Choi later justified the denial of MSJP's application on the basis of safety concerns—for both MSJP and the public—Atallah testified that those concerns were not brought up during MSJP's prior discussions with University officials. She provides she was "shocked" that Dr. Choi cited disturbances across the country and other concerns for campus safety when that issue had not been brought to MSJP's attention before. (Doc. #14-3, p. 1.) While the Court is also concerned with safety, Defendant has provided no supporting case law that would allow incidents at other universities to justify limiting the First Amendment rights of Plaintiff in Missouri.

The Court also observes that the rationale provided for the 2025 denial is essentially identical to the 2024 rationale, despite the evidence that MSJP has not been engaged in or connected to any form of violence. Therefore, the Court finds there is a "fair ground for litigation" to support MSJP's motion for preliminary injunction. *Sleep No. Corp.*, 33 F.4th at 1017. Accordingly, under either designated public forum analysis, the Court finds there is a "fair chance" that Dr. Choi's 2025 denial of MSJP's participation in the Homecoming Parade violates the First Amendment's Free Speech clause and MSJP is likely to prevail on the merits of its claim. *Sleep No. Corp.*, 33 F.4th at 1017.

**B. Remaining Preliminary Injunction Factors**

"When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Schmitt v. Rebertus*, No. 24-2707, 2025 WL 2352582, at *8 (8th Cir. Aug. 14, 2025) (quoting *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012)).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Id*. (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Further, "it is always in the public interest to protect constitutional rights." *Id*. (quoting *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019)). Finally, "the balance of the equities generally favors the constitutionally-protected freedom of expression." *Id*. (internal citation omitted). Based on the Court's conclusion that MSJP is likely to succeed on the merits of its First Amendment claim, it also finds that the other preliminary injunction factors weigh in its favor.[8]

As a final matter, the Court notes that while it finds MSJP must be permitted to participate in the 2025 Homecoming Parade, nothing in this Order prohibits the University and Dr. Choi from enforcing the requirements of the Parade Policy. McCubbin testified that MSJP's 2025 application would likely be preliminarily approved, and the Office of Alumni Engagement would work with the group to ensure it complied with the Parade Policy. MSJP stated in its Complaint that it intends to display signs stating, "Ceasefire Now" and "Stop the Genocide"—statements that were not disclosed in its application. While MSJP may participate in the parade, its participation remains subject to full compliance with the 2025 Homecoming Parade Policy and the terms of its submitted application.

IV.     **CONCLUSION**

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. #12) is GRANTED.

---

[8] To the extent that Dr. Choi argues that a preliminary injunction is improper because it would "not maintain the status quo" because MSJP has never participated in the Homecoming Parade, the Court rejects that argument. (Doc. #21, p. 21.) The status quo is that an application for the Homecoming Parade that on its face abides by the guidelines is allowed to participate in the parade. Further, 2024 is the first year that MSJP applied to be a part of the parade and its application was rejected the only year it applied. The Court finds it improper to say the "status quo" is MSJP not participating in the Homecoming Parade when it is Dr. Choi's own actions that did not allow MSJP's participation in the first place. Finally, even if the Court were to find that MSJP's request does not preserve the status quo, MSJP has satisfied its "heavy" burden "of demonstrating that a preliminary injunction is warranted." *Dakota Indus., Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991).

17

It is ORDERED that this Court hereby enters a Preliminary Injunction enjoining Dr. Choi, his officers, agents, employees, attorneys, and all other persons acting in active concert with him from denying MSJP entry in the 2025 Homecoming Parade as long it complies with the Parade Policy.

**IT IS SO ORDERED.**

DATE: September 19, 2025

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE