**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **Mizzou Students for Justice in Palestine**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:25-cv-04184-SRB |
| v. | ) | |
| | ) | |
| **Dr. Mun Y. Choi**, President of the University | ) | |
| of Missouri School System and Chancellor of | ) | |
| the University of Missouri, in his individual | ) | |
| and official capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant Dr. Mun Y. Choi, President of the University of Missouri System and Chancellor of the University of Missouri, in his individual and official capacity ("Defendant," "President Choi," or "the University"), by and through undersigned counsel, respectfully submits this Response in Opposition to Plaintiff's Motion for Preliminary Injunction.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.    The First Amendment is Not at Issue Because the Homecoming Parade is Government Speech. ............................................................................................................................... 3

    A. The Parade Policy Provides That the Parade is Government Speech. ........................... 4

    B. U.S. Supreme Court Precedent Shows That the Parade is Government Speech. ........... 5

II.    MSJP's Injunction Request Would Also Fail Under a First Amendment Analysis. .......... 9

    A. Concerns About Disruption and Safety Support the University's Denial. ..................... 9

    B. The Parade is a Nonpublic Forum. ................................................................................ 14

III.    The Requested Preliminary Injunction Would Not Maintain the Status Quo, So It Cannot Be Issued. ........................................................................................................................... 17

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowman v. White*,
444 F.3d 967 (8th Cir. 2006) .................................................................................14, 15, 16

*Cajune v. Indep. Sch. Dist. 194*,
105 F.4th 1070 (8th Cir. 2024) ...........................................................................................6

*Cigna Corp. v. Bricker*,
103 F.4th 1336 (8th Cir. 2024) ...........................................................................................2

*Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*,
473 U.S. 788 (1985)..............................................................................................................9

*Dataphase Sys., Inc. v. C L Sys., Inc.*,
640 F.2d 109 (8th Cir. 1981) (en banc) .........................................................................3, 8

*Denali Summit, LLC v. Union Electric Co.*,
2024 WL 4750522 (Sept. 24, 2024)....................................................................................3

*Ferry-Morse Seed Co. v. Food Corn, Inc.*,
729 F.2d 589 (8th Cir. 1984) .........................................................................................2, 17

*Heckler v. Lopez*,
463 U.S. 1328 (1983)...........................................................................................................17

*Ivey v. Johnston*,
2018 WL 5785953 (D. Minn. Nov. 5, 2018) ..................................................................18

*Leake v. Drinkard*,
14 F.4th 1242 (11th Cir. 2021) ...........................................................................................6

*McCullen v. Coakley*,
573 U.S. 464 (2014).............................................................................................................13

*Ng v. Bd. of Regents of Univ. of Minnesota*,
64 F.4th 992 (8th Cir. 2023) ...............................................................................................3

*Pleasant Grove City, Utah v. Summum*,
555 U.S. 460 (2009)...............................................................................................................4

*Roudachevski v. All-Am. Care Centers, Inc.*,
648 F.3d 701 (8th Cir. 2011) ...............................................................................................2

*Sanborn Mfr. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*,
997 F.2d 484 (8th Cir. 1993) .................................................................................2, 17, 18

*Sav-Rx Prescription Servs., Inc. v. Drugsite Ltd.*,
    2023 WL 8528464 (D. Neb. Dec. 8, 2023)................................................................17

*Schenck v. Pro-Choice Network Of W. New York*,
    519 U.S. 357 (1997)................................................................................................13

*Shurtleff v. City of Boston, Massachusetts*,
    596 U.S. 243 (2022)...........................................................................................4, 6, 7

*Viewpoint Neutrality Now! v. Regents of Univ. of Minnesota*,
    516 F. Supp. 3d 904 (D. Minn. 2021).......................................................................7

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015)...................................................................................4, 5, 6, 9, 14

*Watkins, Inc. v. Lewis*,
    346 F.3d 841 (8th Cir. 2003) ....................................................................................2

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................................2

**Other Authorities**

First Amendment .......................................................................1, 3, 4, 5, 7, 8, 9, 13

BLACK'S LAW DICTIONARY (12th ed. 2024)..............................................................10

Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.2.5
    (7th ed.)......................................................................................................................4

Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.4.1
    (7th ed.)....................................................................................................................15

Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2947 (3d ed.)......................18

# INTRODUCTION

This case is about whether the upcoming University of Missouri Homecoming Parade is government speech. The University, like every public institution, is entitled to speak in its own voice, to celebrate its own traditions, and to decide how best to project its identity to the public. That is what the University does through its Homecoming Parade—a University-sponsored, University-funded, University-organized event designed to highlight the institution's achievements and rally support for its community before a football game.

The Supreme Court has been clear: when, as here, the government speaks, the First Amendment does not require it to turn its platform into an open forum for every viewpoint. Mizzou Students for Justice in Palestine ("MSJP") nevertheless asks this Court for the extraordinary remedy of a preliminary injunction—an order compelling the University to upend its recently-adopted policy and insert MSJP's message into the parade. That request faces a doubly steep burden. A preliminary injunction is an extraordinary remedy never awarded as of right. And here, MSJP seeks not just to preserve the status quo, but to rewrite it—demanding a mandatory injunction that would force affirmative participation in an expressive event the University itself controls.

Even if this Court were to bypass the dispositive conclusion that the Homecoming Parade is government speech, MSJP's claims still collapse under a forum analysis. Even if the Parade were considered an unlimited public forum (and it is not), the University's restrictions are plainly reasonable: given the size of the event, the open parade route, and recent incidents of disruption linked to MSJP and similar organizations nationally, the University acted well within its discretion to mitigate the risks of conflict and ensure the safety of thousands of participants and spectators.

Further, the Parade is not a public forum at all—it is a University-curated event, designed for the limited purpose of celebrating institutional traditions, alumni connections, and school spirit.

1

The Supreme Court has long held that when the government opens its property for restricted expressive activity, it may impose reasonable, viewpoint-neutral limitations. MSJP's claim that the Parade is an "unlimited public forum" is belied by the text of the policy itself, which expressly disavows such an interpretation.

For these reasons and those set forth below, the preliminary injunction should be denied.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The burden of establishing the propriety of an injunction is on the movant. *Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003). The movant's burden is particularly heavy when the request is for a mandatory injunction (i.e., forcing action) rather than prohibitory injunction (i.e., forcing inaction) because the primary purpose of a preliminary injunction is to preserve the status quo, whereas ordering affirmative action is "substantially the same relief [the movant] would obtain after a trial on the merits." *Sanborn Mfr. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 489–90 (8th Cir. 1993); *see also Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984) (stating the "primary function ... is to preserve the status quo until, upon final hearing, a court may grant full, effective relief.").

In the Eighth Circuit, a party seeking a preliminary injunction must demonstrate four equitable factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)); *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (same). No single factor is regarded as dispositive; rather, the court should

balance all the factors in considering whether the injunction should be granted. *Ng v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 997 (8th Cir. 2023).

## ARGUMENT

MSJP cannot satisfy the *Dataphase* factor requiring a "likelihood of success on the merits." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d at 114. As explained in detail below, MSJP's claims fail at the threshold because the Homecoming Parade is government speech and thus not subject to First Amendment constraints. Even if the Court were to engage in forum analysis, MSJP's claims would still fail: the Parade is not a public forum as MSJP contends, the University's restrictions are both reasonable and viewpoint-neutral, and MSJP's allegations of pretext are wholly unsupported. For these reasons, MSJP cannot demonstrate any probability of prevailing on the merits, and its request for the extraordinary remedy of a preliminary injunction must be denied. *Denali Summit, LLC v. Union Electric Co.*, 2024 WL 4750522, at * (Sept. 24, 2024) (noting that "the likelihood of success on the merits is the most significant" of the *Dataphase* factors and "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied").

## I.    The First Amendment is Not at Issue Because the Homecoming Parade is Government Speech.

Contrary to MSJP's contentions, the Homecoming Parade *is* government speech. As set forth in the 2025 Homecoming Parade Policy (the "Parade Policy"), the Parade is "an activity of the University" that is "administered by the Office of Alumni Engagement … in collaboration with the Mizzou Alumni Association." Dkt. 14–7, at 2. The policy provides that the Parade is "an expression of the University … accomplished with assistance of participating groups." *Id.* The University applies for the parade permit and is responsible for funding, organizing, and hosting the parade. *Id.*

3

Because the University is the speaker here, MSJP's First Amendment challenges fail as a matter of law. Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.2.5 (7th ed.) ("The Supreme Court has held that when the government is the speaker the First Amendment does not apply at all or provide a basis for challenging the government's action."); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."); *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."); *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243, 252 (2022) ("The First Amendment's Free Speech Clause does not prevent the government from declining to express a view."). MSJP agrees, conceding that if the parade is government speech, the inquiry will end because "the Free Speech Clause would not regulate it." Dkt. 14, at 4–5.

### A.  The Parade Policy Provides That the Parade is Government Speech.

As the Supreme Court has explained, "[t]here may be situations in which it is difficult to tell whether a government entity is speaking on its own behalf or is providing a forum for private speech." *Id.* at 470. But this is not such a case. Under the Parade Policy, the Parade is put on *by* the University, is *about* the University, and *promotes* the University during Homecoming. The University has, by constant tradition, controlled each of those elements for decades, and has codified those requirements by adopting the Parade Policy in 2025. Moreover, the University may exercise its speech even when, as here, "it receives assistance from private sources for the purpose of delivering a government-controlled message." *Id.* at 468.

MSJP premises its request for a preliminary injunction on the fact that the Parade Policy "does little more than announce a color theme." Dkt. 14, at 9. Such an argument is belied by the plain text of the Parade Policy, which provides that the Parade is to celebrate the University's

"traditions and accomplishments," foster "alumni connections," honor University-selected achievements, and "[r]ally support and enthusiasm for the Homecoming football game." Dkt. 14–7, at 2. This is not just about colors: this is about an event dedicated to the University to celebrate its football team. As such, the University is entitled—free from the requirements of the First Amendment—to select the private sources it wishes to use for purposes of delivering those messages. By hosting the parade and selecting its participants, the University is "not simply managing government property, but instead is engaging in expressive conduct." *Walker*, 576 U.S. at 216.

**B.**     **U.S. Supreme Court Precedent Shows That the Parade is Government Speech.**

The Supreme Court has said that certain factors point to speech being government speech. All of the factors identified by the Supreme Court weigh in favor of the University here. First and foremost, it says to look "to the policy and practice of the government." *Walker*, 576 U.S. at 215–16. Under the Homecoming Parade Policy, the government is the speaker, and nothing about the policy indicates that it is creating a forum for private speech. To the contrary, the Parade Policy expressly *disavows* doing so by unambiguously stating that the Parade "is not an open forum for expression on topics identified by participants, but rather is limited to expression on topics identified by the University" in the policy. Dkt. 14–7, at 2. MSJP ignores this provision, never addressing it, but the policy makes clear that this is a Parade *by* the University *for* the University.

Another factor identified by the Supreme Court similarly confirms that the Homecoming Parade is government speech. The Supreme Court has emphasized that it is "significant" whether the government "maintain[s] control over the selection" of messages. *Walker*, 576 U.S. at 210. Here, the Parade Policy squarely vests that control in the University, with the University President holding final, unreviewable approval. The University has not "relinquished control to private actors," nor has it "maintained a passive role"—two of the only factors that can undermine a

determination that the University controls the message—and MSJP does not argue otherwise. *Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1081–82 (8th Cir. 2024). This final-approval authority confirms that the University is "choos[ing] how to present itself and its constituency," which is the hallmark of government speech. *Walker*, 576 U.S. at 213. The government here is shaping and controlling the expression by curating parade participants to project a unified, pro-Mizzou message. *Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1082 (8th Cir. 2024) (noting that "[g]overnment speech requires that a government shape and control the expression," and finding it instructive that "Texas had a review process and final approval authority over the content of the plates").

Additionally, the Supreme Court has made clear that "the public's likely perception as to who (the government or a private person) is speaking" should be considered. *Shurtleff*, 596 U.S. at 252. That, too, weighs in the University's favor. A reasonable observer at the parade would naturally conclude that the University is the speaker, since the University obtains the permit, funds the event, sets the theme, and orchestrates the proceedings as a central part of Homecoming—a multi-day event focused on the University and its football team. *Leake v. Drinkard*, 14 F.4th 1242, 1253 (11th Cir. 2021) (noting that "the Sons of the Confederate Veterans cannot force the City to include a Confederate battle flag in the veterans parade it funds and organizes") (cleaned up). MSJP concedes that the Parade "is undoubtedly organized and funded by Mizzou." Dkt. 14, at 7. But then it insists that this is undone because "the parade features all manner of controversial or partisan political expression." *Id*. at 8. Not true. MSJP cites no cases for this legal proposition, and its factual premise is incorrect: as specified in the Parade Policy, the content is limited to pro-University content.

Finally, the Supreme Court has indicated that courts should look at "the history of the expression at issue." *Shurtleff*, 596 U.S. at 252. This is the first year of the Homecoming Policy,

so this factor is of little relevance here. But even if MSJP is correct that the Court should consider the general history of parades and the "specific history of the Mizzou Homecoming Parade," it is incorrect that such a parade "belongs to all the people." Dkt. 14, at 6–8. The parade is, and always has been, about the University and its football game, not a political free-for-all. A simple example inspired by the Supreme Court demonstrates the point. The Supreme Court explained that, if government speech were not exempted from the First Amendment's Free Speech Clause, "Boston could not easily congratulate the Red Sox on a victory were the city powerless to decline to simultaneously transmit the views of disappointed Yankees fans." *Shurtleff*, 596 U.S. at 251–52. In a similar vein, the Homecoming Parade at Mizzou has never been an open forum. Otherwise, it would be required to allow the floats of other universities, such as the University of Kansas. But the century-long absence of a Jayhawk on the parade route, and the certainty that none will appear, underscores that the Parade is and has always been the University's own message, not an open platform for every viewpoint.

A district court within the Eighth Circuit has recently held that a university's official website constitutes government speech. *Viewpoint Neutrality Now! v. Regents of Univ. of Minnesota*, 516 F. Supp. 3d 904, 927–28 (D. Minn. 2021). In reaching this conclusion, the court emphasized three key factors: (1) the university uses its website to communicate with the public; (2) the website is "closely identified in the public mind" with the university; and (3) the university maintains complete control over the website's content—students, unless explicitly granted access, have no input. *Id.* at 928.

The same three principles compel the conclusion that a university-sponsored homecoming parade is likewise government speech, and not a public forum subject to First Amendment constraints. First, a university exercises editorial control over both platforms. Just as a university determines what content, images, and announcements appear on its website, it decides which floats

and groups may participate in its parade, how they are ordered, and what scripts are read to the audience as the parade participants move down the road. A university, through its homecoming parade, curates expression rather than creating an unrestricted public forum.

Second, both a website and a parade are vehicles for institutional identity. A website communicates the university's values, priorities, and achievements in digital form. A parade performs the same function in physical form, showcasing tradition, school spirit, and community ties. In both cases, the university is speaking in its own voice.

Third, the public reasonably perceives the message as the university's own. Visitors to a website naturally attribute its content to the institution, and spectators at a parade understand that the event as a whole—and the messages conveyed within it—are endorsed by the institution, even if some participants are student organizations, community groups, or local officials. Limited participation by invited groups whose expression conforms with the topics identified by the University does not transform a university's speech at a parade into private speech, just as faculty or student features on the website do not render the website an open platform.

In short, the Parade Policy makes clear that the event is an official University activity, organized, funded, and controlled by the University to celebrate its traditions, foster alumni connections, and promote its football program. Each of the recognized factors confirming government speech points in the University's favor: the text and practice of the Parade Policy vest final approval authority with the University President; the content is limited to University-identified themes; reasonable observers perceive the event as University expression; and the century-long tradition of Homecoming parades has consistently reflected institutional—not public—messaging. This conclusion is not altered by the participation of private groups.

Thus, under *Dataphase*, a preliminary injunction is unwarranted because the University is not infringing on a First Amendment right when it chooses how to exercise its own speech.

8

## II.    MSJP's Injunction Request Would Also Fail Under a First Amendment Analysis.

The analysis should stop with Part I because the Homecoming Parade is government speech, so any "forum analysis is misplaced here." *Walker*, 576 U.S. at 215. Considering MSJP's framing of the issue and the impending hearing, however, Part II explains why—even under a First Amendment analysis—the requested mandatory preliminary injunction should be denied.

"Even protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985). A "forum analysis … applies to government restrictions on purely private speech occurring on government property." *Walker*, 576 U.S. at 201. "[T]he extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius*, 473 U.S. at 797.

Sub-part II(a) explains why concerns about disruption and safety justify exclusion of MSJP from the parade regardless of the public/nonpublic distinction. Sub-part II(b) explains why, even if safety were not a concern (which it is), the nonpublic forum standard would apply, and it would not support the requested injunction.

### A.    Concerns About Disruption and Safety Support the University's Denial.

Under any forum standard, MSJP's claims will fail because the University has raised valid concerns about the potential for disruption—and even unsafe conduct—at the Homecoming Parade.

The 2024 denial was based on a "review of SJP events around the country" and an event involving MSJP leadership earlier that semester. Dkt. 14, 2. Denial in this year's parade has occurred for the same reasons plus additional events this past spring. Dkt. 13–1, at 2 (explaining that the parade entry "was not approved due to safety concerns for members of your organization and other homecoming participants"). In both years, the University has communicated its

9

willingness to provide alternative locations on the day of the Homecoming Parade for MSJP to convey its message. *Id.*

MSJP calls the University's concerns "pretextual." Dkt. 14, at 14–15. As a threshold (and dispositive) matter, MSJP has put forth no evidence of pretext. MSJP complains that this concern is being enforced only against MSJP, *id.* at 15, but that alone is no evidence of pretext. Black's Law Dictionary defines the concept as "[a] false or weak reason or motive advanced to hide the actual or strong reason or motive." Pretext, BLACK'S LAW DICTIONARY (12th ed. 2024). But MSJP has no testimony or documentation—nor even any non-conclusory allegations—that the University disagrees with its viewpoint or supports opposing viewpoints. For MSJP's arguments to make sense, it must have some evidence of pretext, but it has none, and it cites nothing. Its arguments are entirely conjectural and conclusory. MSJP insists that the University President "left no room for any interpretation of his actions except that he did so because he did not want messages in support of Palestine displayed at the parade." Dkt. 14, at 14. But that simply does not follow from the events in question. MSJP has no knowledge of the University President's motive; it has no information concerning his beliefs. Any claim that MSJP is disfavored is further undone by the University's willingness to provide alternative venues for expression both years, and by its repeated willingness for MSJP to hold other events on its campus. This provision of alternative space shows that the University's concern is about potential disruption to the Parade, and not about the message.

Contrary to MSJP's contentions, the University's concerns about disruption and safety are based on concrete, well-founded examples at other universities, and at Mizzou itself. Numerous universities have had disruptions—and even violence—occur at SJP events in recent years. For example, in April 2024, protests at the University of California at Los Angeles led to instances of

pushing, shoving, and "trading punches."[1] A month later, demonstrators at Columbia University stormed the library, vandalized property (including with a message that "Columbia will burn"), and clashed with security, with two public safety officers sustaining injuries.[2] Days after that, at the University of Pennsylvania, potential weapons were found at cleared encampments.[3] And at the University of Arizona, rocks and water bottles were thrown at police officers and university staff.[4] Such a list could go on and on, because similar incidents occurred at Harvard University, Tufts University, Temple University, and several other campuses.

 While MSJP tries to minimize that concerning event, it leaves out several subsequent developments. MSJP protested at the 2024 Homecoming Parade, despite being denied participation. Parade Photograms, attached as Exhibit C. Its members held signs that said "Ceasefire Now" and "Stop the Genocide".

---

[1] *See Hundreds of students arrested in US Gaza war protests, scuffles at UCLA,* AL JAZEERA (April 28, 2024), available at https://www.aljazeera.com/news/2024/4/28/hundreds-of-university-students-arrested-in-us-as-gaza-war-protests-spread/.

[2] *See Pro-Palestinian demonstrators clash with security guards at Columbia University*, AP News (May 8, 2025), available at https://apnews.com/article/columbia-pro-palestine-protest-d6963720d50e92f271346d9febb95f18.

[3] *See Police arrest dozens as they break up pro-Palestinian protests at several US universities*, AP News (May 10, 2024), available at https://apnews.com/article/mit-arizona-pennsylvania-campus-protests-encampment-police-7d9cd0a1f4ac7eaca41b38de798a2217.

[4] *Id.*

*Id*. Rather than accept the University's offer for MSJP to convey its message at an alternative location, it demonstrated along the Parade route as though the denial had never occurred at all. These actions show that MSJP's objective is to promote its own views, regardless of their potential to disrupt or endanger.

In November 2024, MSJP sent a letter to the University President and others demanding, among other items, a "public apology," the classification of "anti-Palestinian rhetoric as xenophobic and racist," a "platform … at next year's Homecoming parade," and measures "to address racism and discrimination on campus." November 18 Email from Student Groups, attached as Exhibit D. The University President responded that he would be willing to meet with the students, but that he would not respond to a list of demands. November 18 Email from President Choi, attached as Exhibit E.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

MSJP's Motion for a Preliminary Injunction is founded on the demonstrably false premise that it is being targeted for its "political beliefs." Dkt. 12, at 1. But that's not true. The University has repeatedly communicated to MSJP that it may not participate in the parade because concerns about disruption and safety. MSJP's conduct at prior events, combined with numerous national incidents involving similarly-situated organizations, left the University President and the University with tangible, concrete fears of a disruption to the Homecoming Parade. The University need not wait for disruption—or even violence—before taking prophylactic measures. *Schenck v. Pro-Choice Network Of W. New York*, 519 U.S. 357, 375–76 (1997) (agreeing with the district court's conclusion that the court can consider public safety as an important governmental interest when evaluating the First Amendment arguments); *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (recognizing the legitimacy of government's interests in ensuring public safety and order); *McCullen v. Coakley*, 573 U.S. 464, 486, 134 S. Ct. 2518, 2535, 189 L. Ed. 2d 502 (2014) (recognizing the legitimacy of government's interests in ensuring public safety and order).

The Homecoming Parade presents unique safety challenges. The parade route spans nearly three miles along prominent parts of Columbia, Missouri. It crosses University and non-University property. There are expected to be more than 30,000 onlookers. The parade occurs in a crowded and open environment. It is monitored by University police and the Columbia Police Department

---

[5] *See University of Missouri seeks to restrict protests, but lawyer says policy may be unconstitutional*, KCUR (May 7, 2025), available at https://www.kcur.org/education/2025-05-07/university-of-missouri-protest-policy-unconstitutional.

with a joint command. Unlike speech in a classroom, lecture hall, or campus quadrangle, disruption in a parade setting risks not only the breakdown of the University's message but also significant threats to public order and personal safety. Floats, vehicles, and marching groups create logistical challenges that amplify the potential for injury if tempers flare or confrontations arise. The University thus acted well within its discretion to conclude that allowing a group with a recent history of disruptive conduct—and against the backdrop of escalating unrest and violence at similar events nationwide—posed an unacceptable risk to the safety of participants and spectators alike. Courts have long recognized that the government may adopt prophylactic measures to prevent disorder before it occurs, and the University's choice here reflects that principle applied in the distinct, sensitive context of a parade.

MSJP remains free to convey its message on other parts of campus during the Homecoming Parade, as the University offered both last year and this year. But given the unique risks and logistical challenges of the Parade, there is no Constitutional bar to excluding MSJP from marching along the parade route.

### B. The Parade is a Nonpublic Forum.

MSJP argues that the Parade is an "unlimited designated public forum." Dkt. 14, at 10. As set forth above, because the Homecoming Parade is government speech, "forum analysis is misplaced here." *Walker*, 576 U.S. at 215. But even if this Court disagrees, it should conclude that the Parade is a nonpublic forum.

Under Supreme Court and Eighth Circuit precedent, a traditional public forum is one in which "has the physical characteristics of a public thoroughfare," "the objective use and purpose of open public access," and has been "traditionally … used for expressive conduct." *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006). Examples would be "streets, sidewalks, and parks." *Id.* MSJP does not contend that the Parade is an open public forum.

A designated nonpublic forum is one that the "government intentionally opens to expressive activity for a limited purpose such as use by certain groups or use for discussion of certain subjects." *Id.* A designated nonpublic forum can be unlimited or limited, with the latter occurring where "the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Id.* at 976. A nonpublic forum is property "which is not classified as a traditional public forum or designated public forum." *Id.* A key consideration is whether the government has opened the area "for public discourse." *Id.* at 978.

MSJP believes that the Parade is a designated unlimited public forum and thus its exclusion must satisfy intermediate scrutiny. Dkt. 14, at 10. But this argument is nonsensical. MSJP says the parade is "boundless" and "not limited to particular speakers." Dkt. 14, at 11. But those notions are contradicted by the plain text of the Parade Policy, which restricts participation to a narrow and invited list of persons and groups who must apply and "[s]how how the[ir] proposed entry is consistent with the theme / topics for the parade." Dkt. 14–7 at 2. MSJP adds that the purpose is "vague" and "does not dictate the kind of speech participants must express at the parade." Dkt. 14, at 11–12. But that's not true either. The policy specifies that the Parade is to celebrate the University's "traditions and accomplishments," foster "alumni connections," honor University-selected achievements, and "[r]ally support and enthusiasm for the Homecoming football game." Dkt. 14–7, at 2. Participants not meeting those criteria are properly denied entry.

If the Parade is not deemed to be government speech, it is either a designated nonpublic forum or a nonpublic forum. The distinction will not, for purposes of this case, matter. Erwin Chemerinsky, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES § 11.4.1 (7th ed.) (noting it is possible the Supreme Court has "collapsed nonpublic forums into the category of limited public forums since the test for both would be the same"); *Bowman*, 444 F.3d at 976 (noting the

restrictions on speech in "a limited public forum must only be reasonable and viewpoint neutral" and that in a nonpublic forum the restrictions must be "reasonable" and "not an effort to suppress expression merely because the public officials oppose a speaker's view") (cleaned up).

Here, the Parade is government speech, but if the court disagrees, it is a nonpublic forum, because the University has not opened it for public discourse. *Id*. Thus, even under forum analysis, the University's decision to exclude MSJP is constitutional. The Parade is not a venue for indiscriminate expressive activity, but rather a curated event designed to advance the University's own celebratory purposes. Because the policy limiting participation is both reasonable in light of those purposes and viewpoint neutral, it easily survives scrutiny under either the limited public forum or nonpublic forum framework. Accordingly, MSJP's forum-based challenge fails.

MSJP's challenge would even fail under intermediate scrutiny, which provides that the government "may enforce a content-neutral time, place, and manner restriction only if the restriction is necessary to serve a significant government interest and is narrowly drawn to achieve that interest." *Id.* at 978. There is no dispute that the risk of disruption and concerns about safety are significant government interests. MSJP insists that concerns about safety "could be addressed through much more narrow means" because the University President could forbid specific students from participating or provide additional security. Dkt. 14, at 12–13. But there is no evidence that that would work given the special security challenges of the Parade.[6] The only way to address the situation is to allow what the University has offered: an alternate place on campus for MSJP to engage in expression.

Further, there is no evidence of viewpoint discrimination. MSJP does not allege that the Parade Policy is anything but viewpoint neutral. It claims that it has been excluded "because of

---

[6] Nor is there evidence that excluded students would accept that outcome. Once again, MSJP students demonstrated along the parade route despite being excluded last year.

[its] viewpoint." Dkt., 12, at 14. But as set forth above, MSJP has no knowledge of the University President's motive, nor any evidence that he is taking positions based on a dislike of its viewpoint. Any claim that MSJP is disfavored is further undone by the University's willingness to provide alternative venues for expression, and by its repeated willingness for MSJP to hold other events on its campus.

### III. The Requested Preliminary Injunction Would Not Maintain the Status Quo, So It Cannot Be Issued.

"[T]he primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). "[C]ourts have applied more stringent requirements to the granting of a mandatory preliminary injunction than a prohibitory preliminary injunction." *Sav-Rx Prescription Servs., Inc. v. Drugsite Ltd.*, 2023 WL 8528464, at *5 (D. Neb. Dec. 8, 2023); *see also Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993). Such a request, "which like a mandamus, is an extraordinary remedial process," and must be viewed cautiously and issued sparingly. *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983).

MSJP's request is that "this Court enter a preliminary injunction enjoining [the University President] from denying its participation in the 2025 Homecoming Parade." Dkt. 14, at 16. Similarly, the Complaint requests that this Court "[e]njoin the University from Prohibiting [sic] MSJP from participating in the 2025 Homecoming Parade because of the messages MSJP intends to express." Dkt. 1, at 15. Though the request is couched in terms of a prohibition, MSJP in fact is requesting positive acts: approving MSJP's application to participate in the Parade and then allowing it to do so. There is no dispute that, under the Homecoming Policy, participating must be affirmatively approved. Moreover, there can be no dispute that allowing participation in the Parade would require the organizers to take steps to allow participation.

17

The problem with MSJP's request is that it does not return the parties to the status quo, which was that MSJP would *not* be participating in the Parade. The status quo is generally measured as the "last peaceable uncontested status." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2947 (3d ed.). But at no point in history has MSJP been approved to participate in the 2025 Parade. Thus, it is requesting a mandatory injunction.

"A preliminary injunction is already an extraordinary remedy, but the burden becomes even higher when a party requests a mandatory preliminary injunction, requiring an alteration of the status quo." *Ivey v. Johnston*, 2018 WL 5785953, at *1 (D. Minn. Nov. 5, 2018); *see also Sanborn*, 997 F.2d at 486. Here, MSJP cannot meet the already-high bar for a preliminary injunction, let alone the even higher bar for a mandatory preliminary injunction.

## CONCLUSION

For the reasons set forth above, MSJP's Motion for Preliminary Injunction should be denied.

Date: September 12, 2025

SHOOK, HARDY & BACON LLP

By: /s/ Christopher R. Wray
Holly Pauling Smith, MO Bar #51340
Christopher R. Wray, MO Bar #66341
Burcu Yalcin Erbaz, MO Bar #74913
2555 Grand Boulevard
Kansas City, Missouri 64108
Tel: (816) 474-6550
Fax: (816) 421-5547
hpsmith@shb.com
cwray@shb.com
berbaz@shb.com

*Attorneys for Defendant Dr. Mun Y. Choi,
President of the University of Missouri School
System and Chancellor of the University of
Missouri*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system, which sent electronic notification of this filing to all attorneys of record.

*/s/*    Christopher R. Wray
*Attorney for Defendant*
