**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| **Mizzou Students for Justice in Palestine,** | |
| Plaintiff, | |
| v. | **Case No. 25-cv-04184-SRB** |
| | **Hon. Judge Stephen R. Bough** |
| **Dr. Mun Y. Choi,** President of the University of Missouri School System and Chancellor of the University of Missouri, in his individual and official capacity, | |
| Defendants. | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT DR. MUN Y. CHOI'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD ................................................................................................... 1

ARGUMENT ................................................................................................................ 1

    I.    MSJP Has Adequately Pleaded Standing. ................................................... 1

        A.    The Complaint complies with Fed. R. Civ. P. 9(a). ............................... 1

        B.    MSJP has adequately alleged standing. ...................................................... 3

    II.    Plaintiff MSJP has plausibly alleged a violation of its First Amendment rights (Count I). 4

        A.    The Complaint shows the 2024 Parade was not government speech. ........................... 4

        B.    The 2024 Parade was at least a limited public forum. ................................... 8

    III.    Dr. Choi is not entitled to qualified immunity. ............................................... 12

        A.    The violation under an unlimited public forum was clearly established. .................... 13

        B.    The violation under a limited public forum was clearly established. .......................... 13

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alexis Bailly Vineyard, Inc. v. Harrington,*
  931 F.3d 774 (8th Cir. 2019) ........................................................................................ 4
*All. for Hippocratic Med.,*
  602 U.S. 367 (2024) ................................................................................................. 2, 3
*Anderson v. Creighton,*
  483 U.S. 635 (1987) ..................................................................................................... 12
*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ..................................................................................................... 12
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................................................... 1
*Bowman v. White,*
  444 F.3d 967 (8th Cir. 2006) ............................................................................... Passim
*Business Leaders in Christ v. University of Iowa,*
  991 F.3d 969 (8th Cir. 2021) ...................................................................................... 14
*Cajune v. Ind. Sch. Dist. 194,*
  105 F.4th 1070 (8th Cir. 2024) ............................................................................ 7, 8, 11
*Chiu v. Plano Ind. Sch. Dist.,*
  260 F.3d 330 .............................................................................................................. 11
*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez,*
  561 U.S. 661 (2010) ............................................................................................. 13, 14
*City of Cincinnati v. Discovery Network, Inc.,*
  507 U.S. 410, 113 S. Ct. 1505 (1993) ........................................................................ 13
*Frisby v. Schultz,*
  487 U.S. 474 (1988) ................................................................................................... 10
*Gay Lib v. Univ. of Mo.,*
  558 F.2d 848 (8th Cir. 1977) ........................................................................................ 3
*Gerlich v. Leath,*
  861 F.3d 697 (8th Cir. 2017) ............................................................................... Passim
*Glick v. W. Power Sports, Inc.,*
  944 F.3d 714 (8th Cir. 2019) ........................................................................................ 1
*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ................................................................................................... 12
*Healy v. James,*
  408 U.S. 169 (1972) ..................................................................................................... 7
*Hope v. Pelzer,*
  536 U.S. 730 (2002) ................................................................................................... 12
*Intervarsity Christian Fellowship/USA v. Univ. of Iowa,*
  5 F.4th 855 (8th Cir. 2021) ........................................................................................ 10

*Int'l Women's Day March Plan. Comm. v. City of San Antonio*,
    619 F.3d 346 (5th Cir. 2010) ............................................................................. 7

*Leake v. Drinkard*,
    14 F.4th 1242 (11th Cir. 2021) ...................................................................... 5, 7

*Make the Road by Walking, Inc. v. Turner*,
    378 F.3d 133 (2d Cir. 2004) ........................................................................... 13

*Matal v. Tam*,
    582 U.S 218 (2017) ...................................................................................... 6, 7

*N. Shore Right to Life Comm. v. Manhasset Am. Legion Post No. 304, Town of N. Hempstead*,
    452 F. Supp. 834 (E.D.N.Y. 1978) .................................................................... 5

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ...................................................................................... 12

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
    460 U.S. 37 (1983) ............................................................................... 9, 13, 14

*Pipeline Prods., Inc. v. S&A Pizza, Inc.*,
    No. 4:20-CV-00130, 2022 WL 584661 (W.D. Mo. Feb. 25, 2022) ........................... 2

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ........................................................................................ 9

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
    515 U.S. 819 (1995) ................................................................................. Passim

*Shurtleff v. City of Bos., Mass.*,
    596 U.S. 243 (2022) ..................................................................................... 5, 6

*Speech First, Inc. v. Cartwright*,
    32 F.4th 1110 (11th Cir. 2022) .......................................................................... 3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................................... 3, 4

*Students of UC Riverside v. Kleindienst*,
    60 F.R.D. 65 (C.D. Cal. 1973) .......................................................................... 3

*Thorburn v. Austin*,
    231 F.3d 1114 (8th Cir. 2000) ......................................................................... 10

*UAW v. Brock*,
    477 U.S. 274 (1986) ........................................................................................ 1

*Uzuegbunam v. Preczewski*,
    592 U.S. 279 (2021) ........................................................................................ 4

*Viewpoint Neutrality Now! v. Regents of Univ. of Minn.*,
    516 F.Supp.3d 904 (D. Minn. 2021) ................................................................ 11

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015) ............................................................................... 6, 8, 11

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ........................................................................................ 9

*Whitton v. City of Gladstone, Mo.*,
    54 F.3d 1400 (8th Cir. 1995) ..................................................................... 10, 13

*Widmar v. Vincent*,
    454 U.S. 263 (1981) ................................................................................. 12, 15

Rules

Fed. R. Civ. P. 9(a) ...................................................................................................... 1
Fed. R. Civ. P. 9(a)(1) ................................................................................................. 2
Fed. R. Civ. P. 9(a)(2) ................................................................................................. 2
Fed. R. Civ. P. 17(b)(3)(A) .......................................................................................... 3

Other Authorities

5A Wright & Miller, *Fed. Prac. & Proc.* § 1294 (4th ed.) ........................................... 2

## INTRODUCTION

When Mizzou Students for Justice in Palestine ("MSJP") applied to participate in the University of Missouri's ("the University") 2024 Homecoming Parade, University Chancellor Dr. Mun Choi denied its application. Dr. Choi did so because he did not want MSJP to express its belief that Israel was committing a genocide. And in doing so, he violated clearly established law holding that when a university creates a public forum for speech, it may not exclude speakers on the basis of viewpoint. Defendant's motion to dismiss should be denied.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court "accept[s] as true all factual allegations in the light most favorable to the nonmoving party." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I.     MSJP Has Adequately Pleaded Standing.

#### A.  The Complaint complies with Fed. R. Civ. P. 9(a).

Organizations, such as MSJP, can assert standing either (1) for injuries suffered directly by the organization or (2) on behalf of their members for the members' injuries. *See UAW v. Brock*, 477 U.S. 274, 281 (1986). MSJP pleads it has directly suffered injury through violation of its First Amendment rights—the denial of its ability to participate in the 2024 Homecoming Parade. Compl. ¶¶ 91–92 (Doc. 1). When asserting organizational injury, a pleading must only meet the

1

"usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024).

Defendant argues—citing no authority—that to sufficiently plead "organizational standing," MSJP must prove that it is an "organization." Def.'s Suggs. in Supp. Mot. Dismiss, Doc. 28, at 2–3. This is incorrect. Fed. R. Civ. P. 9(a)(1) makes clear that the Complaint need not plead MSJP's "capacity to sue," "authority to sue . . . in a representative capacity," or "legal existence" unless such is "required to show that the court has jurisdiction." *See also Pipeline Prods., Inc. v. S&A Pizza, Inc.*, No. 4:20-CV-00130, 2022 WL 584661 at *2 (W.D. Mo. Feb. 25, 2022). Defendant's contentions that the Complaint contains little about MSJP's "history or structure," "who its members are," its incorporated status, or whether "this suit is authorized by MSJP" are therefore irrelevant. They concern MSJP's capacity, authority, and legal existence and Defendant nowhere claims that such facts are needed to show jurisdiction. Doc. 28 at 3.

If Defendant wishes to raise the issues of MSJP's capacity, authority, or legal existence, it must do so through a "specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a)(2). In a motion to dismiss, these issues can be raised *only* if "the lack of capacity, authority, or legal existence issue appears on the face of the pleadings." 5A Wright & Miller, *Fed. Prac. & Proc.* § 1294 (4th ed.). Merely questioning the sufficiency of MSJP's pleadings is inadequate. Defendant must show both that capacity is jurisdictional and that the Complaint on its face demonstrates a lack of capacity. *See S&A Pizza*, 2022 WL 584661 at *3 (rejecting, on a motion to dismiss, defendant's argument that plaintiff "[did] not plead facts to affirmatively establish . . . capacity"). He has made no attempt to do so.

Regardless, the Complaint does adequately allege that MSJP has capacity to sue. MSJP has pleaded that it is a "registered student organization" "dedicated to Palestine advocacy on the

University of Missouri's campus." Compl. ¶¶ 10, 25. A student organization, "formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective," may sue to enforce a "substantive right" under the United States Constitution or federal law as an unincorporated association. *Assoc'd Students of UC Riverside v. Kleindienst*, 60 F.R.D. 65, 66–69 (C.D. Cal. 1973) (quoting Fed. R. Civ. P. 17(b)(3)(A)) (holding that "official student government organization" at state university has capacity to sue); *see generally Gay Lib v. Univ. of Mo.*, 558 F.2d 848 (8th Cir. 1977) (ruling in favor of unregistered student group suing under its common name for First Amendment claim).

### B. MSJP has adequately alleged standing.

MSJP can allege standing by pleading that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

*First*, MSJP has alleged both a "concrete" and "particularized" injury in fact. *Id.* at 339. Defendant mistakenly claims that MSJP's standing is rooted in the costs it spent preparing for the 2024 Parade. Doc. 28 at 3. MSJP suffered an injury to its free speech rights by *being denied the ability to march in the Parade*. Compl. ¶¶ 64, 65. A direct violation of First Amendment rights constitutes a concrete injury. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022) (citing *Spokeo*, 578 U.S. at 340) (finding "no doubt" injury was "concrete and particularized" because plaintiff "alleged a deprivation of their First Amendment right to free speech"). MSJP's injury was also particularized, "affect[ing] the plaintiff in a personal and individual way," *Spokeo*, 578 U.S. at 339, rather than being "simply a setback to the organization's abstract social interests," *All. For Hippocratic Med.*, 602 U.S. at 394. MSJP has a right to free speech, and this right was violated through denial of participation in the Parade. Compl. ¶¶ 64–65.

3

*Second*, MSJP has pleaded that the injury to its First Amendment rights was "fairly traceable" to Dr. Choi's actions. *Spokeo*, 578 U.S. at 338. To be "fairly traceable," there must be a "causal connection" between the defendant's actions and the plaintiff's injury. *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 779 (8th Cir. 2019). The Complaint makes such a connection clear by alleging that Dr. Choi made the decision that directly resulted in MSJP's ban from the Parade. Compl. ¶ 78.

*Third*, MSJP has pleaded that its injury would be redressable by the relief sought. *Spokeo*, 578 U.S. at 338. MSPJ seeks nominal and compensatory damages and declaratory relief based on Dr. Choi's denial of participation in the Parade. Compl. ¶ 9 & p. 15. Either compensatory or nominal damages satisfies the redressability requirement here. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290–91 (2021) (holding that nominal damages for a First Amendment violation meet redressability requirement for constitutional standing).

## II. Plaintiff MSJP has plausibly alleged a violation of its First Amendment rights (Count I). [1]

### A. The Complaint shows the 2024 Parade was not government speech.

The Complaint adequately alleges that the 2024 Mizzou Homecoming Parade was not government speech. Defendant's arguments to the contrary rely almost entirely on the new 2025 Parade Policy, which was not in place during the period relevant to Count I.[2] When assessing whether the government has created a forum for others or engaged in its own speech, courts apply

---

[1] MSJP's Complaint alleged two counts. Count I sought relief for past violations of MSJP's First Amendment rights based on its exclusion from the 2024 Homecoming Parade. Count II sought injunctive relief only based on MSJP's rejection from participation in the 2025 Parade. The 2025 Parade took place on September 27, 2025, and MSJP was able to participate based on this Court's order enjoining Dr. Choi from denying their participation (Doc. 29). Given these subsequent events, Count II is now moot, and MSJP proceeds only on Count I.

[2] Even if the 2025 Parade Policy was relevant here, this Court held that the 2025 Homecoming Parade did not amount to government speech. Order Granting Prelim Inj., Doc. 29 at 12.

a three-pronged test that examines the history of the expression, the public's perception of the expression, and the government's control of the expression. *See Shurtleff v. City of Bos., Mass.*, 596 U.S. 243, 252 (2022).

**1. The Homecoming Parade is historically a forum for private speech.**

The history of the University's Homecoming Parade strongly favors MSJP. In considering history, a court must consider both the general history of parades and the specific history of the Mizzou Homecoming Parade. *See Shurtleff*, 596 U.S. at 253-55.

Courts look at the roots and character of different types of parades. Consider *N. Shore Right to Life Comm. v. Manhasset Am. Legion Post No. 304, Town of N. Hempstead*, wherein the court enjoined a town from excluding one group from its Memorial Day parade. 452 F. Supp. 834 (E.D.N.Y. 1978). While the case was not about government speech, the opinion turned on the parade's history and character. The court observed that "Memorial Day parades have for many years been the communities' major annual event … belong[ing] to all the people." *Id.* at 836. The parade included "various local organizations," *id.*, some having "expressed views that some might deem political," *id.* at 840. By contrast, in *Leake v. Drinkard*, the court reasoned that a veterans' parade was government speech because of the "history of military parades in general," which governments have used since ancient times to "commemorate military victories and sacrifices." 14 F.4th 1242, 1248 (11th Cir. 2021).

Here, Defendant points to no allegations in the Complaint indicating that the history of the Homecoming Parade is one of government speech. To the contrary, the Complaint corroborates a history of private speech at homecoming parades in general. *See* Compl. ¶ 18 n.3. On the specific history of the University's Parade, MSJP also points out that the Parade has "long been a place for the expression of political and social messages, including ones widely considered controversial or

offensive" and that it has "welcomed political campaigns and activist groups of all kinds." *Id.* ¶ 19–20. Consistent with this history, the Complaint alleges the 2024 Parade welcomed "[e]ntities across the spectrum," *id.* ¶ 67, and was broadly open to community organizations, political organizations, and student organizations, *id.* ¶ 22.

### 2. The public is not likely to perceive the Parade as government speech.

When considering "whether the public would tend to view the speech at issue as the government's," the court considers whether the public understands the expression as "'conveying some message' on the government's 'behalf.'" *Shurtleff*, 596 U.S. at 255 (quoting *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 212 (2015)). Defendant points to no allegations of the Complaint that suggest the 2024 Parade is likely perceived as government speech. Instead, Defendant improperly relies on allegations outside the Complaint and on the inapplicable 2025 Parade Policy to claim the public would perceive the University as the speaker. Doc. 28 at 9.

The University's Parade traditionally features an eclectic array of expression, including partisan political messages and political groups with directly opposing views. Compl. ¶¶ 19–20, 22. In 2024, the diversity of expression was no different. Compl. ¶¶ 67–68 (participants included businesses, pro-choice and pro-life groups; political candidates, unions, groups waving Trump campaign slogans, and gun control advocates). Rather than government expression, the Parade's cast of participants was akin to a variety of registered trademarks, which the public does not perceive to speak for the government. *See Matal v. Tam*, 582 U.S. 218, 238–39 (2017).

Moreover, the Parade's affiliation with a public university with a history of student activism, Compl. ¶¶ 14–18, further supports that the public would not perceive the Parade as government speech. Public universities are widely understood to "serve as places specifically

designated for the free exchange of ideas." *Bowman v. White*, 444 F.3d 967, 979 (8th Cir. 2006) (citing *Healy v. James*, 408 U.S. 169, 180 (1972)). Public universities routinely "allow messages" both popular and unpopular, and "organize and fund events that contain messages with which they do not wish to be associated." *See Leake*, 14 F.4th at 1250. Transforming university speech into government speech in such contexts would untenably require the government to "express[] contradictory views" and "unashamedly endors[e] a vast array of commercial products and services," or essentially to "babble[] prodigiously and incoherently." *Matal*, 582 U.S. at 236.

Even if the Court could properly consider Defendant's outside-the-complaint allegations regarding the University permitting and funding the Parade, these facts do not suggest the public would perceive the Parade as the government's speech. As the Fifth Circuit explained, a city's sponsorship and financial support for a parade alone does not transform messages conveyed by participants into government speech. *Int'l Women's Day March Plan. Comm. v. City of San Antonio*, 619 F.3d 346, 360 (5th Cir. 2010) (finding city-sponsored parades not government speech because the city merely "endors[ed] the general message . . . through its provision of financial support").

### 3. Dr. Choi and the University do not actively shape or control the Parade expression.

Dr. Choi played little to no role in actively shaping the expression of the 2024 Parade. While he may point to his "final-approval authority," Doc. 28 at 8, "the mere existence of a review process with approval authority is insufficient by itself to transform private speech into government speech." *Cajune v. Ind. Sch. Dist. 194*, 105 F.4th 1070, 1081 (8th Cir. 2024). Private speech cannot be passed off as government speech 'by simply affixing a government seal of approval.'" *Id.* at 1080 (quoting *Matal*, 582 U.S. at 235).

To qualify as government speech, the government must "shape and control the expression." *Id.*; *see also Walker*, 576 U.S. at 213 ("Texas maintains direct control over the messages conveyed on its specialty plates."). Under this test, the Eighth Circuit recently held that Black Lives Matter posters placed in classrooms were not government speech, even though the government maintained a "review process and final approval authority" over the posters. *Cajune*, 105 F.4th at 1081. The court observed that the posters were largely designed and submitted by "private activists," *id.* at 1075, while the government merely "maintained a passive role," *id.* at 1082.

So too here. The application and approval process for student organizations was, for everyone but MSJP, quite simple. Compl. ¶ 56. Only MSJP was confronted about their proposed expression. Compl. ¶ 58. Only MSJP was subjected to a heightened level of scrutiny and review by Dr. Choi. Compl. ¶ 62. Meanwhile, the diverse messages of all groups that did participate in the 2024 Parade, Compl. ¶ 68, were plainly designed by private actors while the University merely "maintained a passive role," *Cajune*, 105 F.4th at 1082.

## B. The 2024 Parade was at least a limited public forum.

Dr. Choi violated MSJP's First Amendment rights by excluding it from the Parade—which was at least a limited public forum—based on its viewpoint. The Eighth Circuit has identified four distinct forums, each with a different constitutional analysis when speech is restricted. *See Bowman*, 444 F.3d at 975–76. MSJP's exclusion violated the First Amendment because the 2024 Parade was an unlimited designated public forum, and MSJP's exclusion was neither content-neutral nor narrowly tailored to achieve a significant interest. But whether the Court finds that the Parade was an unlimited or limited designated public forum, MSJP's exclusion violated the First Amendment because it constituted viewpoint discrimination.

### 1. Dr. Choi violated MSJP's right to speak in an unlimited designated public forum.

An unlimited designated public forum is one that is "not limited to a particular type of speaker," *Bowman*, 444 F.3d at 976, in which the government can only enforce content-neutral time, place, and manner speech restrictions that are narrowly tailored to achieve a significant government interest, *id.* at 980 (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)). The 2024 Homecoming Parade was an unlimited designated public forum, and MSJP's exclusion violated the First Amendment because it was neither content nor viewpoint neutral nor narrowly tailored.

Here, the Parade was open to speakers of all types, with all types of messages, and was thus an unlimited designated public forum. Student organizations, community organizations, and political organizations could all participate in the Parade. Compl. ¶ 22. Participation was limited only by available space. Compl. ¶ 24. Groups and messages of all types, including ones that many people would find controversial or offensive, were permitted. Compl. ¶¶ 20, 67–69.

MSJP's exclusion was not content-neutral because it could not "be justified without reference to the content of the regulated speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."). The only group forbidden from the Parade was MSJP, and the only view forbidden from being expressed was a view in support of Palestinians. Compl. ¶¶ 58, 70. Not only did Dr. Choi forbid MSJP from participating, but he also forbade other student groups from referencing Palestine. Compl. ¶ 71. Another student group initially agreed to hold the Palestinian flag, but Dr. Choi forbade them from doing so unless they also held the Israeli flag. Compl. ¶¶ 72–73.

Meanwhile, Dr. Choi's alleged content-neutral reason for denying MSJP—safety—was strictly pretextual. The Eighth Circuit recognizes that speech restrictions with ostensibly neutral justifications, like safety, may be pretextual if they are only raised in response to specific types of speech. *See Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1405–06 (8th Cir. 1995) (finding that the city's sign ordinance that differentiated between speakers for reasons unrelated to the legitimate interests prompting the regulation impermissibly regulated speech). Here, the ostensible interest of the University—safety—prompted a process and restriction enforced *only against MSJP*. *See* Compl. ¶¶ 62, 69. Yet MSJP had recently organized dozens of public events without a single citation for violating University rules. Compl. ¶¶ 6, 31–33. The fact that only MSJP apparently raised safety concerns for Dr. Choi, while groups with other controversial viewpoints did not, supports the allegation that safety was no more than a pretext for denying MSJP. The real reason was the content of MSJP's expression. Compl. ¶ 65.

Even assuming, *arguendo*, that Dr. Choi's safety concerns were not pretextual, the restriction he enacted—barring MSJP from the Parade—would not survive narrow tailoring. Compl. ¶¶ 65, 75. Dr. Choi could have forbidden any specific student(s) giving rise to concerns from the Parade. MSJP's peaceful participation from the crowd is evidence that, absent Dr. Choi's decision to exclude them, MSJP could have peacefully participated in the Parade like every other organization was allowed. Compl. ¶ 78. By excluding the entire organization, however, Dr. Choi went far beyond "'the exact source of the evil'" he sought to remedy, *Thorburn v. Austin*, 231 F.3d 1114, 1120 (8th Cir. 2000) (quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)), and "took an extreme step . . . to discriminately prevent theoretical harms that may never materialize," *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 865 (8th Cir. 2021).

### 2. Dr. Choi violated MSJP's right to speak in a limited designated public forum.

Even if the Court concludes the Complaint does not sufficiently allege that the 2024 Parade was an unlimited designated public forum, MSJP's exclusion from the Parade violated the First Amendment because the Parade was at least a limited designated public forum. *Bowman*, 444 F.3d at 975 (citing *Chiu v. Plano Ind. Sch. Dist.*, 260 F.3d 330, 345–46 & nn.10–12 (5th Cir. 2001)). A limited designated public forum "exists when a government 'reserve[s] a forum for certain groups or for the discussion of certain topics.'" *Cajune*, 105 F.4th at 1082 (quoting *Walker*, 576 U.S. at 215). "[O]nce a university chooses to create a limited public forum and restrict it to a particular type of speaker (e.g., [Registered Student Organizations]) or a particular subject (e.g., abortion), the university cannot then exclude speakers based on their ideology (e.g., conservative or liberal) or based on their viewpoint (e.g., pro-life or pro-choice)." *Viewpoint Neutrality Now! v. Regents of Univ. of Minn.*, 516 F.Supp.3d 904, 919 (D. Minn. 2021).

As the Complaint alleges, Dr. Choi denied MSJP's participation in the 2024 Parade because of its viewpoint on Palestine and Israel. Compl. ¶ 65. Dr. Choi required MSJP to attend a meeting to explain its intentions at the Parade—a meeting he did not require of any other organization in the Parade. Compl. ¶ 56. At that meeting, University officials—at Dr. Choi's direction—implored MSJP to not carry a banner stating, "END THE GENOCIDE." *Id.* at ¶ 58. MSJP leaders declined. *Id.* at ¶ 59. Shortly thereafter, Dr. Choi sent an email to MSJP notifying them that he decided they would not be permitted in the Parade because, he claimed, of the actions of SJPs at *other universities. Id.* ¶¶ 64–65. The Complaint therefore plausibly alleges that Dr. Choi left no room for any interpretation of his actions except that he did so because he did not want MSJP's messages in support of Palestine displayed at the Parade. *See Rosenberger*, 515 U.S. at 829 (holding that the government cannot target "particular views taken by speakers on a subject").

### III. Dr. Choi is not entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts apply a two-part inquiry to determine whether qualified immunity applies. The first question is whether the facts alleged show the violation of a constitutional right; the second is whether that right was clearly established at the time of the official's conduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For the reasons above, the Complaint plausibly alleges a violation of a constitutional right. As explained below, this right was clearly established when Defendant acted.

A right is "clearly established" when its contours are "sufficiently clear that any reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "There need not be 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Gerlich v. Leath*, 861 F.3d 697 (8th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002) ("[T]he salient question . . . is whether the state of the law . . . gave respondents fair warning.").

Defendant suggests that MSJP asserts only "a generalized free speech interest" and that this case asks the Court to "break new ground." Doc. 28 at 14–15. But the right at issue here is neither abstract nor novel. It is a well-defined First Amendment rule that government officials, including those at public universities, may not discriminate against speech based on content or viewpoint when they have opened a forum for expression. *See, e.g.*, *Rosenberger*, 515 U.S. at 829–30; *Widmar v. Vincent*, 454 U.S. 263, 267–68 (1981).

### A. The violation under an unlimited public forum was clearly established.

A state university has "fair warning" that it creates an unlimited designated public forum by "intentionally opening" a venue for expression without "limit[ing] the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Bowman*, 444 F.3d at 975–76 (quoting, in part, *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 143 (2d Cir. 2004)). Here, because there were no restrictions on who could participate in the Parade and what could be expressed, Compl. ¶¶ 20, 22–24, 67–69, it was clearly established that the University's 2024 Parade was an unlimited public forum.

Within an unlimited public forum, the University had "fair warning" that restrictions must be "content-neutral and narrowly tailored to serve a significant government interest." *Bowman*, 444 F.3d at 980 (citing *Perry*, 460 U.S. at 45). Any reasonable official would know that applying a facially neutral restriction like "safety" to only one type of speech, much less one single group or viewpoint, would not pass muster. *See Whitton*, 54 F.3d at 1406 (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 113 S. Ct. 1505, 1516–17 (1993)); Compl. ¶¶ 62, 69.

### B. The violation under a limited public forum was clearly established.

Even if the Court disagrees that the 2024 Homecoming Parade fits precedent for unlimited public forums, the University also had "fair warning" that it at least "establish[es] limited public forums by opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Gerlich*, 861 F.3d. at 705 (quoting *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 679 n.11 (2010)).

In *Gerlich*, the Eighth Circuit held that a university's trademark-licensing program constituted a limited public forum because it facilitated student expression across groups. 861 F.3d at 705. In considering qualified immunity, the court asked "whether plaintiffs' right not to be

13

subject to viewpoint discrimination when speaking in a university's limited public forum was clearly established." *Id.* at 708. The court concluded that the limited public forum was clearly established at the time. *Id.* The Eighth Circuit reaffirmed this principle in *Business Leaders in Christ v. University of Iowa* (*BLinC*), holding "'it was clearly established' … that a university's recognition of [registered student organizations] constituted a limited public forum." 991 F.3d 969, 985 (8th Cir. 2021) (quoting *Christian Legal Soc'y*, 561 U.S. at 679 n.11).

As in *Gerlich* and *BLinC*, by hosting the Parade, the University opened a space for expression to student groups, among many others. Compl. ¶ 22. A wide array of student groups participated in the Parade, many of which expressed views or represented movements that are controversial or unpopular. Compl. ¶¶ 67–69. The University therefore had "fair warning" that the 2024 Parade was at least a limited public forum.

Within both limited and unlimited public forums, the prohibition on viewpoint discrimination is clearly established. The Supreme Court has long held that, even in limited public forums, government restrictions must be reasonable and viewpoint neutral—that is, not an effort to suppress expression because officials oppose the speaker's perspective. *Perry*, 460 U.S. at 46. The Supreme Court described viewpoint discrimination as "an egregious form of content discrimination" that is forbidden even in limited public forums, requiring neutrality toward "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829–30. Given the targeted treatment of MSJP on the basis of its viewpoint, Compl. ¶¶ 56, 58, 61–65, 70–74, any reasonable official would know that MSJP's exclusion from the Parade falls squarely within the kind of unconstitutional conduct that precedent has long forbidden.

Defendant relies heavily on the claim that there is no case law directly on point holding "that excluding a student group from a university parade constitutes viewpoint discrimination in

violation of the First Amendment under these circumstances." Doc. 28 at 15. However, clearly established law does not require a precedent with identical facts. Indeed, in *Gerlich*, even though no precedent had classified a university's trademark-licensing program as a limited public forum, the court held that existing decisions such as *Rosenberger* and *Widmar* made the governing principles sufficiently clear to give officials fair warning. *Gerlich*, 861 F.3d at 708–09. Therefore, the absence of a binding precedent directly involving a university homecoming parade does not entitle Defendant to qualified immunity.

To the contrary, the authorities cited above leave no doubt that the 2024 Parade, which was open to student and community organizations expressing a wide range of views, was clearly at least a limited public forum under the settled framework, if not an unlimited public forum with its own established legal restrictions. By 2024, these rules were not new, unsettled, or open to reasonable disagreement. Of particular importance, the prohibition on viewpoint discrimination in university forums was clearly established long before Dr. Choi acted. Decades of Supreme Court and Eighth Circuit precedent made it unmistakable that once a public university opens a forum for expressive activity, it cannot exclude participants because it disagrees with their viewpoint. Any university official would have understood that pressuring a student group to alter its message and excluding it when it refused was unconstitutional. Because Defendant's conduct violated this well-defined principle, qualified immunity does not apply.

## CONCLUSION

For the foregoing reasons, Plaintiff Mizzou Students for Justice in Palestine respectfully requests that this Court deny Dr. Choi's motion to dismiss.

Dated: October 17, 2025                    Respectfully submitted,

                                            /s/ Benjamin J. Wilson
                                            Lisa S. Hoppenjans, #63890 (MO)
                                            Benjamin J. Wilson, #63329 (MO)
                                            Rahul Keeranoor (law student authorized under
                                                Local Rule 83.8)
                                            Qikuan Xu (law student authorized under
                                                Local Rule 83.8)
                                            First Amendment Clinic,
                                            Washington University School of Law
                                            MSC 1120-250-102
                                            One Brookings Drive
                                            St. Louis, MO 63130
                                            Phone: (314) 935-8980
                                            lhoppenjans@wustl.edu
                                            benwilson@wustl.edu

                                            **CAIR LEGAL DEFENSE FUND**

                                            /s/ Lena Masri
                                            Lena F. Masri (VA 93291)
                                            lmasri@cair.com
                                            Gadeir Abbas*(VA 81161)
                                            gabbas@cair.com
                                            Ahmad Kaki (VA 101167)
                                            akaki@cair.com
                                            453 New Jersey Ave., S.E.
                                            Washington, DC 20003
                                            Phone: (202) 742-6420
                                            Fax: (202) 488-0833

                                            **BALDWIN & VERNON**

                                            /s/ Eric Vernon
                                            Kevin Baldwin, MO Bar 49101
                                            Eric Vernon, MO Bar 47007
                                            Sylvia Hernandez, MO Bar 70670
                                            Robin Koogler, MO Bar #71979
                                            BALDWIN & VERNON
                                            108 S Pleasant St.
                                            Independence, MO 64050
                                            Tel: (816) 842-1102
                                            Fax (816) 842-1104
                                            Kevin@bvalaw.net
                                            Eric@bvalaw.net

16

Sylvia@bvalaw.net
Robin@bvalaw.net

*Licensed in VA, not D.C.
Practice limited to federal matters

**ATTORNEYS FOR PLAINTIFF**